**Dolores M. WAGNER, Plaintiff,**

v.

**The LITTLE ROCK SCHOOL DISTRICT, Defendant.**

**No. LR–72–C–59.**

United States District Court,
E. D. Arkansas, W. D.

Sept. 17, 1973.

Supplemental Memorandum Opinion
and Final Decree, March 11, 1974.

Eugene R. Warren, Warren & Bullion, Little Rock, Ark., for plaintiff.

Robert V. Light, Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

EISELE, District Judge.

Dolores M. Wagner is black and formerly was employed as an elementary school teacher within the Little Rock School District. She has filed a complaint authorized by 42 U.S.C. § 1983 (1970) for the denial of rights guaranteed by the first and fourteenth amendments to the United States Constitution. She invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1343(3), (4) (1970) and prays for equitable relief and a declaratory judgment as permitted by 28 U.S.C. §§ 2201, 2202 (1970).[1]

---

1. Defendant, relying on the well-established principle that jurisdictional questions may be tendered at any time, challenges for the first time in its post-trial brief the applicability of Section 1983 to this action. In the case of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court construed the term "person" as used in Section 1983 to exclude municipalities. Other courts have applied the holding to dismiss Section 1983 complaints filed against school districts. See, e. g., Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964); Hayes v. Cape Henlopen School District, 341 F.Supp. 823, 828–829 (D.Del. 1972). The Fifth Circuit, however, recently has interpreted Monroe to apply only to claims for money damages. Complaints solely for equitable relief, therefore, are properly brought against a school district. See Harkness v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970). The Eighth Circuit has adopted this construction of Monroe. Strickland v. Inlow, 485 F.2d 186, at 191 n. 11 (8th Cir. Aug. 29, 1973). Plaintiff's complaint includes a request that the Court enter an order "[a]warding to plaintiff such damages as may be established on hearing . . . "; nevertheless, at trial plaintiff did not press her claim for damages and post-trial briefing indicates counsel now requests only declaratory and injunctive relief and reinstatement with back pay, which are equitable in nature.

In her complaint Mrs. Wagner alleges that on February 1, 1972, while under a teaching contract with defendant school district, she was unlawfully terminated in that she was denied fundamental rights of procedural due process as guaranteed by the fourteenth amendment. The complaint states that Mrs. Wagner holds a Teacher's Certificate issued by the Arkansas Department of Education, has twenty-two years experience as a teacher, and has taught for fifteen years in the Little Rock School District. In 1971 Mrs. Wagner was involuntarily transferred from an all black school to Western Hills Elementary School, then all white. Her teaching contract, entered into on January 14, 1972,[2] required Mrs. Wagner to perform the duties of teacher until the completion of the 1971–72 term. The complaint goes on to allege that shortly after commencing her duties at Western Hills Elementary School, she began to receive regular and sustained criticism of her ability as a teacher in vague and generalized language. On January 28, 1972, plaintiff alleges, she was informed orally by the Assistant Superintendent of the Little Rock Public Schools that her services as a classroom teacher would be terminated as of February 1, 1972.

Plaintiff maintains that the termination of her employment during the contract period without written notice, specification of charges, and a hearing constitutes a denial of her fourteenth amendment rights to procedural due process. The complaint prays for an order of reinstatement with back pay, an injunction restraining defendant's terminating plaintiff's employment rights without notice and a hearing, and such damages as may be established at trial along with her costs and a reasonable attorney's fee.

In its answer defendant admits the existence of the teaching contract as alleged and does not controvert the termination. It does, however, maintain that plaintiff received written notice of specific teaching deficiencies and that a conference was held several months prior to the termination at which Mrs. Wagner had the opportunity to discuss the alleged deficiencies with her supervisors. Defendant contends also that Mrs. Wagner was offered the opportunity to meet with the superintendent of the District to discuss the alleged deficiencies and that she declined the opportunity. In summary, defendant maintains that plaintiff was terminated for valid nonracial reasons, that she was given written notice, and that she was afforded an opportunity to be heard regarding the alleged deficiencies and the termination.

Trial was held, and at the conclusion of the evidence and from the bench the Court found that the termination decision was made without regard to race; hence, the only question remaining for the Court is whether the requirements of fourteenth amendment due process were met by defendant.

■ The law is clear that Mrs. Wagner was entitled to procedural due process before the state could deprive her of her contractual right to serve out her one year teaching contract. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Cooley v. Board of Education of Forrest City School District, 453 F.2d 282, 286–287 (8th Cir. 1972). Defendant does not seriously challenge this conclusion. At issue, however, is whether the various communications and meetings between the parties and an offer of an appearance before the School Board were sufficient to meet constitutional standards. In order to fully evaluate defendant's contention, it is necessary to outline in some detail the exchanges between the parties leading up to and immediately after the termination.

---

2. The execution of the teaching contract was delayed until January 14, 1972 for technical reasons. Mrs. Wagner had been teaching since the beginning of the 1971–72 school year by authority of a resolution of the District Board of Directors.

Mrs. Wagner began teaching for the 1971–72 school year on August 24, 1971. Around October 16, 1971, she received from Mrs. Charlsie Brown, the principal, a letter dated October 15, 1971, that informed her of a conference with the principal and Mr. John Fortenberry, Assistant Superintendent for Instruction, scheduled for October 18, 1971, "to talk with you about your responsibilities as a teacher." The meeting was held and Mrs. Wagner was presented a second communication from Mrs. Brown setting forth specific deficiencies:

"1. Use a controlled voice and speak clearly to children.

"2. Display interest and enthusiasm in dealing with pupils, in teaching subject matter, in relationships with other staff members and with parents.

"3. Plan your teaching, know what you are going to teach, follow plans.

"4. Use instruction time for instruction.

"5. Vary method and content of instruction to meet individual needs of your 21 pupils.

"6. Refrain from using ditto pictures to color as busywork.

"7. Teach the curriculum of the Little Rock School District and follow the Nongraded Primary organization in speech and teaching.

"8. Maintain discipline in a relaxed, pleasant atmosphere.

"9. Be professional in all relations with children, parents, teachers and administrators.

"10. Schedule and execute all parent conferences here at schoool.

"11. Take care of your personal financial matters so that the school is not contacted by creditors.

"12. Observe the school policy regarding time on duty in the building and use of this time.

"13. Read bulletins and carry out delegated responsibilities within the school.

"14. Keep pupils records up to date and filed properly."

On October 20, 1971, Mr. Fortenberry wrote plaintiff and advised her that she was being placed on ninety days probation in order to remedy the deficiencies listed in Mrs. Brown's memorandum of October 18. On November 11, 1972, Mrs. Gladys James, Supervisor of Elementary Education, wrote a letter to Mrs. Wagner in which she commented on deficiencies she noted in Mrs. Wagner's performance after a visit to her classroom on November 8:

"1. Show more interest and enthusiasm in your classroom and with your pupils.

"2. Study teacher guidebooks and curriculum guides as you make your daily lesson plans. Know what you are going to present to your students without having to read word for word from the guide.

"3. Place a daily schedule of classes in Lesson Plan Book using the time allotment schedule for the Little Rock Schools as a guide.

"4. Make lesson assignments clear to the students by writing them on the board and explaining so each child will know exactly what he is to do.

"5. Try to motivate the students by having some behavioral objectives.

"6. Have students use manuscript writing tablets for written work. Stress good writing in all subjects.

"7. One reading group should not remain at the reading table more than twenty or twenty-five minutes at one time.

"8. While working with one group of children, keep an eye on those at their seats to see that they are carrying out your assignments.

"9. Be more careful in checking reading workbooks. Check so the student can see his mistake and correct it. Devise some marking system so the parent will understand. Keep workbook and reading lesson together.

"10. Maintain discipline in a relaxed and pleasant atmosphere. Children should wait until they are called upon before answering out loud.

"11. Keen an individual folder of work done by each child.

"12. Stop work at 3:05 each day and evaluate with the class. Send them home happy."

On January 3 and 20, 1972, Mrs. Brown addressed progress reports concerning Mrs. Wagner to Mr. Fortenberry. These reports repeated many of the deficiencies noted in prior communications to Mrs. Wagner. Copies of the reports were sent to plaintiff. The January 20 letter recommended the termination of Mrs. Wagner's contract. On January 28, 1972, Mrs. Wagner met with Mr. William H. Fowler, Assistant Superintendent for Personnel, who advised plaintiff of the decision to terminate her services as of February 1, 1972.

Plaintiff was a member of the Little Rock Classroom Teachers Association, which had in effect with defendant a Professional Negotiations Agreement. This agreement contained provisions for resolving disputes between the administration and members of the Association. A representative of the teachers' organization met with members of the District's administrative staff approximately ten days prior to the date of Mrs. Wagner's termination. The organization took the position that Mrs. Wagner was not being terminated for adequate reasons. The representative stated that she believed the stated deficiencies to be nebulous. She also stated that according to the Professional Negotiations Agreement Mrs. Wagner was entitled to a hearing before the Board of Education.

Apparently because of the intervention of the Classroom Teachers Association, a meeting of the Little Rock School Board was scheduled for February 9, 1972. A representative of the CTA attended the meeting, but Mrs. Wagner did not. The minutes of the meeting indicate that the Board considered the meeting a fulfillment of its obligations under the Professional Negotiations Agreement. The Board voted to sustain Mrs. Wagner's termination. Mrs. Wagner testified that a CTA representative notified her of the Board meeting, but that the notice was received the night before the date of the hearing. On the advice of counsel she declined the opportunity to appear because, in counsel's opinion, she had not received adequate notice of the charges against which she would be called to defend herself and because she had already been terminated. On February 18, 1972, a representative of the CTA wrote the superintendent of the Little Rock Public Schools to request the resolution of Mrs. Wagner's grievance by mediation, another remedy provided in the Professional Negotiations Agreement. No such procedure was instituted. On February 22, however, Mr. Parsons, the Superintendent, wrote Mrs. Wagner to invite her to meet with the administration (not the School Board). The letter informed Mrs. Wagner that she had the right to have a spokesman in attendance.

Defendant contends that the series of communications between plaintiff and those empowered to act on behalf of defendant satisfy all the requisites of procedural due process. It argues that she was given notice of specific deficiencies, allowed a probationary period to correct the deficiencies and repeated opportunities to refute the charges before her principal, the Assistant Superintendent for Instruction and the Assistant Superintendent for Personnel. Moreover, asserts defendant, there is no requirement that due process be accorded *prior* to termination. And it notes that after her termination she was accorded an op-

portunity to appear before the Board and later before the Superintendent.

Plaintiff on the other hand argues that she never received the procedural protection contemplated by the fourteenth amendment. She never received constitutionally adequate notice of the reasons for her termination nor did she have a meaningful opportunity to defend herself before those empowered to make the termination decision. Those with whom Mrs. Wagner communicated are characterized by counsel for plaintiff as "investigators" for the Board and therefore incapable of acting as neutral hearing officers within the concept of procedural due process.

■ Procedural due process is a malleable concept. Its essential elements vary according to "[t]he precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of the hurt complained of and the good accomplished . . . ." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U. S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Nevertheless "[a] fundamental requirement of due process is the opportunity to be heard, 'at a meaningful time and in a meaningful manner.'" Ahern v. Board of Education of School District of Grand Island, 456 F.2d 399, 403 (8th Cir. 1972) (citations omitted). In this case defendant failed to comply with this fundamental requirement. Because of the distinctive facts of this case defendant denied Mrs. Wagner her rights of procedural due process by its failure to accord her an adequate, meaningful hearing *prior* to its decision to terminate her employment.

■ A corollary to this holding is that the conferences, held prior to the termination decision, were not "hearings" as contemplated by the fourteenth amendment. A constitutionally adequate hearing must be held before a neutral hearing officer and the charged party be given reasonable notice prior to the hearing, not only of the particulars of the alleged misconduct but also of the possible adverse consequences of the hearing.[3]

■ Setting aside the question of the adequacy of the notice of the charges against Mrs. Wagner (to be discussed *infra*), the Court believes the conferences between Mrs. Wagner, her principal and the Assistant Superintendent for Instruction on October 18, 1971; between Mrs. Wagner and her principal and her Elementary Education Supervisor on several dates; and between Mrs. Wagner and the Assistant Superintendent for Personnel immediately prior to the termination were not "hearings" under the fourteenth amendment. None occurred before a neutral party or before the party empowered to terminate Mrs. Wagner's contract. Assuming the good faith of all concerned,[4] the meetings constituted an effort to identify the problems and to work out some program or method of correcting Mrs. Wagner's alleged deficiencies.

3. *Cf.* Brandt v. Hickel, 427 F.2d 53, 56 (9th Cir. 1970). Although the cited case arose in a context significantly different from that before the Court, its language and the policy behind that language is immediately applicable to Mrs. Wagner's circumstances. The Court believes Mrs. Wagner to have been genuinely surprised when notified of her termination. During her final conference with Mrs. Brown on January 7, 1972, as reported by Mrs. Brown in her January 20 letter to Mr. Fortenberry, Mrs. Wagner enumerated her reforms and promised additional improvement. The Court is not convinced that Mrs. Wagner believed she was actually being confronted with termination. All communications with administrative personnel must be viewed in this light.

4. At the trial the plaintiff strongly attacked the good faith of the conferences. She asserts that Mrs. Brown disliked her personally from the first day she reported to Western Hills Elementary School and suggests that all that followed was simply an attempt to make a case against her which could support termination by the School Board.

In cases of this type, school administrators at the operating school level may take on the trappings of prosecutors. It is they who observe and report questionable conduct. Counsel for plaintiff characterizes the individuals concerned in this case as "investigators". Regardless of the characterization, they do not have the degree of neutrality required of one who sits in judgment at a due process quasi-adversary hearing. The Court arrives at this conclusion not on the basis of any judgment regarding the motives and temperaments of the individuals concerned, but because the evidence in the case revealed the roles and responsibilities of the administrative personnel involved. The principal, Mrs. Brown, appeared to be an efficient, dedicated, no-nonsense school administrator. Her judgment as to Mrs. Wagner's teaching abilities, or lack thereof, may be valid. But she may not be the "judge" considering the role which she naturally played as school principal in this case. Mrs. Wagner is entitled to know the charges against her and to have a fair opportunity to defend against such charges—all before an impartial hearing officer. At issue is not whether incompetent persons should be permitted to attempt to teach our children. All agree they should not be. But when a person has been accepted as a competent teacher—in this case for over twenty years—and the school authorities later determine to their satisfaction in the middle of a school contract year that she is incompetent, then they must proceed in the manner indicated if they are to meet the fairness requirements implicit in the due process concept.

As an alternative to its contention that the pre-termination conferences accorded plaintiff the due process required by the fourteenth amendment, defendant argues that the opportunity to meet with the Board and later with the Superintendent cured any previous procedural defect in the termination. The Court believes, however, that absent extreme circumstances,[5] the Constitution requires that governmental decisions, subject to the requirement of procedural due process, be rendered only *after* those procedural requirements have been satisfied. The very purpose of procedural protection is the tempering of the decision process to help insure fairness, and fairness demands that competing interests be represented before the decision-maker on as equal a footing as circumstance permits. The individual who is the object of the proposed governmental action should not have to bear the handicap of overcoming the inertia of the status quo; he should not bear the burden of persuading the decision-maker to reverse a fait accompli unless the proponent of the action can show specific, valid, and appropriate reasons for precipitous, pre-hearing action. No such reasons or circumstances existed here. Hence, the decision regarding Mrs. Wagner's termination became constitutionally infirm upon its implementation; subsequent acts, short of reinstatement, by defendant could not have cured the infirmity.

Mrs. Wagner challenges not only the timing[6] and nature of the procedures, but also the adequacy of the notice given. This issue the Court finds to be particularly difficult. The repeated evaluations of Mrs. Wagner, which defendant tenders as notice of cause for termination, are largely in terms and language common to the teaching profession. Much of the language in the suggestions for improved conduct appears in the teacher evaluation forms utilized by defendant in prior years and introduced into evidence by plaintiff. The

---

5. Those extreme circumstances are confined to situations in which a legitimate state interest is immediately threatened, thereby justifying pre-hearing action. Fielder v. Board of Education of School District of Winnebago, 346 F.Supp. 722, 729–730 (D.Neb.1972).

6. The Court agrees with plaintiff that the length of the notice given to her of the School Board meeting of February 9, 1972 was itself inadequate, under the facts and circumstances of the case.

difficulty with the language utilized is that its purpose appears to have been to achieve improvement in Mrs. Wagner's teaching habits rather than to give her notice of charges against which she would have to defend; consequently, the statements are conclusory and describe general attitudes or behavioral patterns. In most cases due process notice contemplates accusations of specific acts or patterns of conduct unequivocally identified rather than general charges relating to attitudes and behavior patterns unsupported by specific factual allegations. The Court does not intend to suggest, however, that notice in the form of conclusory allegations in all cases is constitutionally inadequate. In a case of dismissal for incompetency the decision may be based on the evaluation of many variables that might require unreasonable efforts to reduce to specificity. In such cases, however, the school authorities should bear a heavy burden of justification to insure that the lack of specificity does not become a cloak for arbitrariness.

Because of the Court's finding regarding the absence of a hearing, it does not have to decide the adequacy of the notice given plaintiff in this case. The parties have been alerted to the problem and, it is assumed, will deal with it conscientiously if further administrative procedures are undertaken.

Counsel for the parties are requested to promptly confer in an attempt to agree upon the form of a precedent judgment. They will report to the Court the results of their conference on or before September 20, 1973.

## SUPPLEMENTAL MEMORANDUM OPINION AND FINAL DECREE

██ Although the Court's Memorandum Opinion was filed in this case on September 17, 1973, entry of final judgment has been delayed at the request of counsel. Since the filing of the Court's Memorandum, counsel for the defendant has renewed his objection to the Court's jurisdiction under Section 1983 and also has raised questions as to the period of the District's liability for back pay. By letter of February 15, 1974, the Court indicated its change of attitude concerning jurisdiction in this matter under Section 1983. The Court, however, is convinced that, despite the absence of Section 1983 authorization for this type suit, the Court retains jurisdiction of the matter under Section 1331.

██ The final matter for resolution in the case is the period of defendant's liability for back pay. Counsel for both parties met with the Court on March 7, 1974, and in informal conference discussed the varying positions. Counsel for defendant argued the District was at most liable for the period remaining in the contract in force during the school year of her termination. Her contract entitled her to a salary for one school year and Arkansas law provides no tenure rights. See Nethercutt v. Pulaski County Special School District, 248 Ark. 143, 450 S.W.2d 777 (1970).

The fallacy in this argument is that Arkansas' continuing contract law has the effect of automatically renewing a teacher's contract absent notification in writing by the school district of its intent not to renew the contract. See Ark.Stat.Ann. § 80–1304 (Supp.1971). These standards were not met in this case. Therefore, once the midyear termination was found to have been ineffective and therefore a nullity, Mrs. Wagner continued as a teacher in the Little Rock School District and her contract was renewed during succeeding years because defendant failed to conform to Arkansas law.

Counsel for the defendant argues further that such a result charges school districts with the foresight that is unreasonable in the light of the rapid development of the law in this area. Counsel also notes the problem has been exacerbated by the time required in this case for trial and resolution of factual issues. The Court is sympathetic to counsel's complaint. The law is clear in this circuit, however, that an unconstitutional termination is a nullity and that a

teacher is entitled to reinstatement with back pay until the contract finally expires or school authorities terminate a teacher's employment in a constitutional manner. *See* Wellner v. Minnesota State Junior College Board, 487 F.2d 153, 157 (8th Cir. 1973); United States v. Cotton Plant School District No. 1, 479 F.2d 671, 673–674 (8th Cir. 1973).

 The Court recognizes that defendants in these cases are in a peculiar position during pendency of such actions. School authorities must defend procedures they have utilized as being sufficient according to law and effective to terminate employment. Subsequent actions repeating the termination process are susceptible of interpretation as admissions of the inadequacy of the initial effort. Yet, if the initial effort was infirm, liability mounts during the pendency of the case. One possible solution is to give these cases some high priority on the court's docket; however, this is not always possible. A preferable solution, in the Court's opinion, is to permit defendants to proceed to terminate employees in a lawful manner, *pendente lite,* if they choose to do so and if special circumstances do not create a basis for the enjoining of such actions. For example, at the end of the 1972 school term Mrs. Wagner could have been notified by the Little Rock School District of her non-retention for the next school year pursuant to the Arkansas continuing contract law. *See* Ark.Stat.Ann. § 80–1304 (Supp.1971). All of this could have been done by the defendant without prejudice to its allegations in the pending case that Mrs. Wagner already had been terminated in a lawful manner. Presumably, this Court, or any other court confronted with the problem, would recognize the dilemma the defendant was placed in; and accordingly, construe whatever actions have been taken, in effect, to terminate a teacher doubly, to be in no way prejudicial to defendant's position in the pending action.

The Court will not attempt to anticipate the effect of a second *midterm* or mid-contract termination, *pendente lite,* as opposed to the non-renewal posited above. Suffice to say that different considerations may be involved.

The Court recognizes the rapid evolution of the law in this area confronts school districts, attorneys and courts with perplexing problems. Evolution in the law, however, should not deter school authorities from asserting their rights to fulfill their administrative responsibilities. There is no doubt that school districts in this State have ample authority in determining the fitness of employees to continue in the classroom, and have a responsibility to the people of the State to insure that only qualified individuals occupy teaching positions. The Constitution poses no bar to the proper exercise of these rights and the fulfillment of these responsibilities. Fairness is the goal, and that goal will be achieved if the decision-maker approaches these problems open-mindedly and gives the charged party an opportunity to state his position and to influence the decision-making process.

Pursuant to findings of fact and conclusions of law stated from the bench at the conclusion of the trial on September 29, 1972; in the Court's Memorandum Opinion filed on September 17, 1973; in the Court's letter to the parties on February 15, 1973; and in this Supplemental Memorandum Opinion, it is ordered that Mrs. Wagner be reinstated with back pay and all other rights and benefits to which she would be entitled had the unlawful termination not taken place. The sum due and owing Mrs. Wagner may be reduced by $5,013.99, representing the amount earned by the plaintiff while in substitute employment and in mitigation of defendant's liability. It is further ordered that plaintiff's request for an attorney's fee be, and it is hereby, denied. Costs of this action are assessed against the defendant.