633 P.2d 1130

Laurie SIMMONS, Plaintiff–Appellant,

v.

**BOARD OF TRUSTEES OF INDEPEN-
DENT SCHOOL DISTRICT NO. 1,**
Defendant–Respondent.

No. 13120.

Supreme Court of Idaho.

Sept. 3, 1980.

On Rehearing Sept. 2, 1981.

Byron J. Johnson, Boise, for plaintiff–appellant.

Reed Clements of Clements, Clements & Brown, Lewiston, for defendant–respondent.

DONALDSON, Chief Justice.

This is an action by plaintiff–appellant Laurie Simmons (hereinafter referred to as "employee") for reinstatement in her employment as a teacher's aide following her discharge by the Board of Trustees of Independent School District No. 1 (hereinafter referred to as "school district"). Employee alleges she was discharged in violation of her right to due process of law because she was dismissed without a hearing or the opportunity to be heard. In addition to seeking reinstatement, employee also seeks back pay with interest and other fringe benefits which she claims she was entitled to as an employee of the school district following her discharge.

Laurie Simmons was employed as a teacher's aide at Camelot Elementary School in Independent School District No. 1, Nez Perce County, for the 1977–78 school year, and had been employed in that capaci-

ty for two school years prior to the year in question. She was a "classified employee," an uncertified employee under contract with the school district, as opposed to being a "certified employee," one holding a certificate from the Idaho State Department of Education, and her employment with the school district was on the basis of an oral contract, subject to renewal and confirmation annually at the option of the school district. Employee's duties were specifically set forth in a written job description which she acknowledged she had received. Included in the job description was an obligation on her part as a teacher's aide to "perform such other duties as may be assigned" in addition to those specifically set forth.

On October 31, 1977, the principal of Camelot Elementary assigned employee to monitor a kindergarten class for three days while the regular teacher was engaged in parent–teacher conferences. Upon receiving this assignment, employee notified the principal that she would not perform it. The record indicates that employee refused to perform because she felt that she was not supposed to accept that kind of assignment, that a teacher's aide was not qualified to do such work and that it would be unprofessional for her to do so. The principal then notified her that continued refusal to accept the assignment would probably result in termination of her job.

The following day the principal again advised her of the assignment to monitor the kindergarten class. The employee again refused to accept the assignment and the principal informed her that her job as teacher's aide had been terminated. Upon being notified of the employee's discharge, the superintendent of the school district contacted employee and reviewed with her the reasons for her termination as well as the reasons why employee felt the job should be refused. Employee was advised that she could avoid termination by accepting the assignment. Employee again refused and the superintendent confirmed her termination as of November 1, 1977.

Employee then initiated this action and a trial was held on the matter. The trial court specifically found that employee's job was terminated for cause as a result of employee's "willful voluntary rejection of an assignment of duties," which assignment was found by the trial court to be reasonable and within the scope of her employment, and that "employee was afforded adequate notice and due process of law as required." The trial court found for the school district and entered a judgment to that effect, dismissing employee's action with prejudice. Employee now appeals from dismissal of her action. For reasons stated herein we affirm the dismissal.

As her first argument on appeal, employee raises the issue of whether she was discharged in violation of her right to due process of law. To respond to this question adequately, it is necessary to undertake a two–prong inquiry: (1) whether employee had a property right which required notice and a due process hearing and, (2) if employee had such a right, whether the notice and hearing afforded her was sufficient under the circumstances to meet the due process requirements established by *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In *Board of Regents v. Roth, supra,* the United States Supreme Court declared:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709.

Thus, where the claimant can show that a decision not to rehire somehow deprived him of an interest in "liberty," or that he had a "property" interest in continued employment, then an opportunity for a hearing is required. *Perry v. Sindermann, supra* at 599, 92 S.Ct. at 2698.

We need not decide the existence of a property interest in the present case, since the school district acknowledges, and the

trial court found, that employee had a property interest in the job, entitling her to notice and due process before her position was terminated. Having satisfied the first prong of the two–step inquiry, we need only concern ourselves with whether the notice and the hearing afforded employee were sufficient to meet the minimum requirements of procedural due process.

■ Procedural due process has been described as a malleable concept. *Wagner v. Little Rock School District*, 373 F.Supp. 876, 881 (E.D.Ark.1973). Its essential elements vary according to

> "[t]he precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of the hurt complained of and the good accomplished. . . ." *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

Despite its malleable characteristics, a fundamental requirement of due process is the opportunity to be heard, at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Ahern v. Board of Education*, 456 F.2d 399, 403 (8th Cir. 1972); *Cooley v. Board of Education*, 453 F.2d 282, 286–87 (8th Cir. 1972).

In the past, this Court has declared that where a teacher has established a property right in his teaching contract, he cannot be deprived of that interest without notice and an opportunity to be heard. *Ferguson v. Board of Trustees*, 98 Idaho 359, 363–64, 564 P.2d 971, 975–76 (1977). Thus, at a minimum, due process requires that there be at least notice and the opportunity to be *meaningfully* heard."

In the present case the trial court concluded

> "[t]hat plaintiff had full and ample notice of her prospective termination, was fully aware of the reasons for termination of her employment and that such constituted, as a matter of law, due notice as required for termination of her employment; that the plaintiff had, on two separate occasions, the opportunity to have and was afforded a hearing, both by her principal and by her superintendent, at which time the position of the plaintiff and that of her employer were fully understood each by the other, constituting compliance with constitutional provisions of due process of law for the termination of plaintiff's employment with defendant."

■ The findings of the trial court which are based on competent, substantial and largely uncontroverted evidence will not be overturned on appeal. I.R.C.P. 52(a); *Heckman Ranches, Inc. v. State*, 99 Idaho 793, 589 P.2d 540 (1979); *Lewis–Clark Memorial Gardens, Inc. v. City of Lewiston*, 99 Idaho 680, 587 P.2d 821 (1978). Only where the findings of fact made by the trial court are clearly erroneous will they be set aside. I.R.C.P. 52(a); *Marshall Bros., Inc. v. Geisler*, 99 Idaho 734, 588 P.2d 933 (1978); *Lester v. Lester*, 99 Idaho 250, 580 P.2d 853 (1978).

■ The record indicates that employee knew that if she failed to accept the assignment, she would be terminated. She was so told not only twice by her principal, but also by her superintendent. Employee was aware of the reason for her dismissal. She had ample and adequate opportunity to evaluate her position and change her opinion. Any other procedure or a formal hearing besides that provided by the superintendent would have been "a meaningless gesture." *Biklen v. Board of Education*, 333 F.Supp. 902, 909–10 (N.D.N.Y.1971).

Likewise, the record indicates that employee met with her principal on two separate occasions, discussed with him her reasons for refusing to accept the position, and then had a telephone conference with her superintendent, reviewing in detail her personnel file and her reasons for refusing the assignment. At no time during these proceedings did she request a more complete

hearing. Employee also testified that she did not feel her superintendent was abrupt or arbitrary with her during their discussion. In light of these discussions with her supervisors, we cannot conclude that employee did not have a meaningful opportunity to be heard. We therefore affirm the decision of the trial court to dismiss the case with prejudice, holding that the substantial requirements of procedural due process—notice and a meaningful opportunity to be heard—were complied with by the school district.

We agree with employee's argument that the principal issue on appeal is whether or not there was compliance with procedural due process in her discharge from employment. Our holding that there was compliance therefore makes it unnecessary to consider any subordinate issues.

Affirmed, with costs to respondent. No attorney's fees allowed.

SHEPARD, BAKES and McFADDEN, JJ., concur.

BISTLINE, Justice, dissenting.

Before explaining my reasons for disagreeing with the majority as to whether appellant's right to due process has been denied, it is necessary to set forth the proper scope of review to be applied in this case. The majority correctly states the general rule that "[o]nly where the findings of fact made by the trial court are clearly erroneous will they be set aside." However, the majority then uses this general rule to defer to the *legal conclusion* of the trial court that the facts adduced at trial amounted to a "meaningful opportunity" to be heard, and therefore satisfied appellant's constitutional right to be free from deprivations of property without first having the benefit of the due process of law. In so doing, the majority abdicates its judicial responsibility to insure that the law is correctly interpreted and applied to the facts brought before the lower court. We have not been asked to review the trial court's findings of fact. We have been asked, and properly so, to determine whether, *given* the facts (which neither party seriously contests), the appel-

lant, as a *legal* matter, received the full benefit of the procedural rights afforded her by the Fourteenth Amendment of the United States Constitution. We make this determination unfettered by the legal inferences or conclusions which the trial court has applied to the facts. *See Harding v. Home Inv. and Sav. Co.*, 49 Idaho 64, 286 P. 920, *rehearing denied* 49 Idaho 75, 297 P. 1101 (1930); 5 Am.Jur.2d *Appeal and Error* § 820.

The majority opinion fails to present a clear picture of the sequence of events as they occurred here. Appellant's "meaningful opportunity" to be heard occurred in the following manner. On October 31st, appellant was informed for the first time that she would be required to watch the class in which she was employed as a teacher's aide while the regular teacher held parent—teacher conferences. She stated at that time that she was opposed to performing that work. Later that same day she was notified that if she would not accept the assignment, she would be terminated. The *following day*, November 1, appellant returned to the school, was again asked if she would accept the assignment and, when she replied in the negative, her employment was terminated. At this point in time, appellant's only "meaningful opportunity to be heard" had been before the principal, *i. e.*, the same person who made the initial decision to terminate her employment. *Subsequent to* her termination, but still on November 1, appellant was contacted over the telephone by the district superintendent, who discussed with her the reasons for her refusal to accept the assignment and the resulting termination. On November 2, appellant requested a written statement of the reasons for her termination. The district refused to give her such a statement.

A majority of the Court on these facts is willing to hold, as a matter of law, that appellant received all of the process due her upon termination of her property interest in continued employment. To my mind, the majority's "interpretation of the law" is nothing more than a deference to the findings of fact of the trial judge. While due

process may be a malleable concept, I for one am not prepared to say that it is now a strictly factual matter to be determined by trial courts on an *ad hoc* basis. The present case illustrates the very fundamental dangers which such an approach engenders.

A minimum requirement of due process is that a person be given *prior* notice and a hearing *prior to* being deprived of a protected interest. "When protected interests are implicated, the right to some kind of *prior* hearing is paramount." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 570 (1972). Failure to accord an adequate, meaningful hearing *prior* to a decision to terminate employment is a denial of procedural due process. *Wagner v. Little Rock School District*, 373 F.Supp. 876, 881 (E.D.Ark.1974). A *pre*-termination hearing is required for a state employee having a cognizable property interest in continued employment. *Wilderman v. Nelson*, 467 F.2d 1173 (8th Cir. 1972). Finally, a *post*-suspension review before the Civil Service Commission has been held insufficient to afford procedural due process to an employee suspended from work for a claimed violation of a hair regulation. A full hearing prior to suspension is required. *Muscare v. Quinn*, 520 F.2d 1212, 1215 (7th Cir. 1975).

Exceptions to the requirement of a prior hearing have been found only where there is a "countervailing state interest of overriding significance." *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 130 (1971). For example, if the action is taken to avert possible violence, as in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), or to prevent property from being immunized from judgment during the pendency of a hearing, as in *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), a deprivation of property interest will be allowed prior to a hearing. The hearing, however, must follow "as soon as practicable" after the deprivation. *Goss v. Lopez*, 419 U.S. 565, 583, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975). These cases clearly indicate that if a hearing is to follow, rather than precede, the taking of a property interest, the bur-

den is on the state to demonstrate *why* the hearing should be subsequent to the taking.

In the case of appellant, the only "notice and hearing" she received *prior* to being terminated by the principal came from the principal himself, and occurred less than 24 hours prior to her termination. Assuming arguendo that appellant's discussion later that same day with the superintendent amounted to a due process hearing, that discussion was *subsequent* to her termination. The superintendent was presented with a *fait accompli* by a lower official within the school district. Whether the fact that the action had already been taken influenced the superintendent's decision to uphold the termination or not, the possibility of such influence necessarily arises where a protected interest receives only a subsequent hearing. Since the school district has advanced no compelling reason, or for that matter *any* reason, for terminating the appellant prior to affording her what little hearing she received, it must be concluded that there was in fact no sufficient reason for terminating her with such unseemly haste, and that appellant's due process rights to a prior hearing were therefore denied.

As to the form which appellant's "hearing" took, it should not be seriously contended that the appellant's telephone conversation with the superintendent amounted to a "hearing" within the meaning of the Due Process Clause of the Fourteenth Amendment. It is clear that conferences between a teacher and principal are not "hearings" within the due process requirements of the Fourteenth Amendment. *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970); *Wagner v. Little Rock School District, supra* at 881. "Due process requires a more formalistic confrontation of facts and positions." *Ferguson, supra* at 857. The statement of the trial court that "the plaintiff had, on two separate occasions, the opportunity to have and was afforded a hearing, both by her principal and by her superintendent. . . ." is incorrect to the extent that it assumes that a conference with the person who made the initial deci-

sion to terminate her property interest (the principal) is capable of fulfilling the requirements of due process. While we held in *Ferguson v. Board of Trustees*, 98 Idaho 359, 564 P.2d 971 (1977), that only actual bias on the part of a person conducting a due process hearing will cause that hearing to be constitutionally insufficient, we have never held, and I would not read the decision of the Court today as holding, that the person initially making the decision to take away the property interest of a third person may sit in a hearing to determine the correctness of that decision. The possibility of bias in such a case is too great to allow for anything but a *per se* rule of disqualification of initial decisionmakers.[1] In the wel-

fare context, the United States Supreme Court has noted that "[p]rior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision–maker. *He should not*, however, have participated in making the determination under review." *Goldberg v. Kelley*, 397 U.S. 254, 271, 89 S.Ct. 1469, 22 L.Ed.2d 751 (1970) (emphasis added).

We are left, then, with a solitary telephone conversation between appellant and the district superintendent as the source of appellant's due process "hearing." I am unwilling to hold, as a matter of law, that a telephone conversation, no matter how well each side believes they understand the position of the other,[2] is ever capable of qualify-

[1]. The majority's opinion notes that the appellant met with the principal on two separate occasions, however this appears to strike the majority as important only as evidence that the employee was informed as to why she was being fired, not as evidence that a hearing was provided. I would certainly expect a more detailed explanation of the majority's reasoning had they intended that the discussions with the principal be viewed in some manner as a "hearing," since such a holding would be contrary to every concept of neutrality found in both our cases and cases from the United States Supreme Court. *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); *Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Ferguson v. Board of Trustees*, 98 Idaho 359, 564 P.2d 971 (1977). *See also* L. Tribe, American Constitutional Law § 10–16 (1978).

[2]. The opinion of the majority indicates that "[e]mployee was aware of the reasons for her dismissal" but says *nothing* about the awareness of the district of employee's reasons for refusing to accept the assignment. If appellant had been accorded more time in which to prepare a presentation of her reasons for refusing the assignment, she might not have been terminated in the first instance. The facts of this case stand as testimony to the injustice which may result from hasty and emotional decision–making.

Appellant testified that her reason for refusing to take over the kindergarten class was that she was not a qualified substitute teacher for an elementary school. I.C. § 33–1201 requires that every person serving in the capacity of a teacher have a certificate to so serve from the state, and appellant did not have such a certificate.

The record indicates the degree of misunderstanding which existed between the school district and employee as to why the job assignment was refused. The principal of the school district testified as follows:

"Q You understood that Laurie Simmons was not a qualified elementary or kindergarten teacher?

"A No, I didn't know that. She never got around to telling me that. I didn't know that she was even a certified teacher until later on.

"Q You didn't have any idea she was a certificated teacher at any level, isn't that true?

"A No, I really didn't know that.

"Q So when you assigned her to the duty you had no knowledge that she was qualified as a substitute teacher?

"A Not in the legal respect. I had observed her work and felt that she was fully qualified to go into the room because of the fact that she had been in the room an hour a day and understood what went on.

"Q But if a kindergarten teacher had called in and indicated she would be absent, would you have hired a person as a substitute teacher who was not qualified under the laws of the State of Idaho?

"A No. We are required to take a substitute teacher off the certified substitute list which is provided by the district.

"Q And isn't that in fact what Laurie Simmons told you her reason for not accepting the assignment was?

"A She didn't think it was ethical to do the assignment. That is what she told me.

"Q And you understood that was because she was not properly qualified under the laws of the State of Idaho to be a teacher?

"A I can't recall that she told me that, no. She just said that she didn't want to do the assignment.

ing as the "hearing" which due process demands. This is particularly true where, as here, the person being deprived of the property interest has had less than 24 hours in which to marshall her arguments, collect her wits, and gather any evidence which might tend to support her position. It should be observed that not every person confronted with a problem immediately resorts to legal advice. It may not be argued here that appellant could not have presented any different evidence in a face–to–face hearing in any event. As the majority opinion makes clear, we are not addressing the merits of the appellant's substantive position; that was not formally presented to nor tried by the court below. Where we are to determine if due process is required by the peculiar facts of each case, we do not sit to evaluate whether the *merits* of each particular case warrant a particular amount of due process. Thus, *we cannot know* whether appellant, or a retained attorney, would have been able to sway the superintendent if allowed the time and opportunity to present her case in a more formal (and face–to–face) setting. We can say only that given the property interest of the individual and given the administrative interests of the state, due process demands a certain type of hearing.

The property interest of the appellant here is not so *de minimus*, and the administrative interest of the school district is not so great, that we should forego all past ideas of what constitutes a due process hearing in order to uphold a trial court's novel ruling that a telephone conversation will suffice. It will seem to some to be inconsistent for this Court to so hold when only recently, in *Cooper v. Board of Commn'r's*, 101 Idaho 407, 614 P.2d 947 (1980), we held that a property owner's due process rights were not met by *three* formal hearings before several administrative bodies, without any analysis of the *extent* of the property interest involved in the zoning decision at issue there. The majority's opinion seems to have forgotten the statement made in *Cooper* that "[t]o allow the discretion of local [officials] to remain virtually unlimited in the determination of individual rights is to condone government by men rather than government by law." [3]

"Q So you really didn't know the reason that she was refusing to do the assignment.
"A I know the assignment was given to her and she refused it flatly; consequently, the procedure proceeded from there.
"Q You didn't know the reason?
"A The reason she refused?
"Q Right.
"A Yes, she told me she didn't think it was ethical.
"Q But you didn't know that there might be some legal cause for her not pursuing the assignment?
"A No, I didn't think there was any legal cause for not–
"Q You didn't know that she was asserting some legal cause?
"A She didn't assert that to me.
"Q And if there had been a hearing for Laurie Simmons prior to her discharge and if it had appeared that there was legal cause, then maybe she wouldn't have been discharged, isn't that true?
"A It is possible."
Further evidence of a misunderstanding between the parties is revealed through their appellate briefs–employee consistently refers to her refusal to "take over" the classroom, in the sense of being a teacher, as her reason for refusing the assignment. The school district, on the other hand, refers to employee's refusal to "monitor" the classroom as its reason for terminating her employment. From their usage of these terms, it becomes apparent that the parties did not contemplate the same task which employee would perform in the classroom for the three day period. A hearing would have eliminated the confusion about whether employee was expected to "teach" or merely "monitor" the classroom.

Thus, to the extent that the majority opinion gives the impression that each side fully understood the other as a result of the procedures actually followed, it is simply wrong.

3. I also note that one of the procedural infirmities condemned in *Cooper* was the lack of a verbatim transcript and specific findings of fact. Appellant in the instant case specifically requested written reasons for the termination of her property interest but was denied them, allegedly because it was not district "policy" to give such written statements. While I undertake no direct comparison of the property interests involved in *Cooper* with those involved in the instant case, it does seem to me that they are not so disparate as to warrant the remarkable disparity in the procedural safeguards accorded in each case.

Lawrence Tribe, one of the most respected constitutional scholars in the nation, made a comment in his recent treatise on constitutional law which strikes me as extremely apropos to my criticism of today's decision, a decision which allows telephone conversations to supplant traditional due process hearings.

"Among the formal procedural safeguards ordinarily held to be required by due process, perhaps the two most striking–*the right to be heard* and *the right to hear why*–are ultimately more understandable as inherent in decent treatment than as optimally designed to minimize mistakes. When God asked Adam if he had eaten of the tree of life, the Midrash explains, the point of the exchange was less to minimize the risk of divine error than to afford Adam a moment to regain his composure. And the Code of Wild Bill Hickock–the code that forbids shooting someone without first looking him in the eye–was likewise concerned with something deeper than reducing mistakes. Those procedural formalities that are implicit in treating persons with respect as members of the community should thus be required by due process for reasons more basic than any utilitarian calculus of accuracy, although accuracy of course matters as well when the procedure is ancillary to a substantive interest of great importance to the individual." L. Tribe, American Constitutional Law § 10–15 at 554 (1978).

If we are to insure that the dignity of individuals is preserved, at least where their life, liberty or property is threatened by the increasingly pervasive presence of state action, then we must be vigilant in our guard against procedures which dehumanize the hearing process. I fear that the decision of the Court today, allowing a telephone conversation to fulfill the purposes of a due process hearing, will be regarded as evincing a callous disregard of the intrinsic value of face–to–face human interaction, and an unseemly preference for the utilitarian values of administrative efficiency.

## ON REHEARING

DONALDSON, Justice.

The petition for rehearing in the above entitled action was granted and the cause reargued. Having again reviewed and considered the arguments of counsel, a majority of the Court continues to adhere to the views expressed and the conclusion reached in the earlier opinion of the Court.

BAKES, C.J., and SHEPARD, J., concur.

BISTLINE, J., continues to adhere to the views expressed in the dissenting opinion.

McFADDEN, J., joins the dissenting opinion of BISTLINE, J.