911 P.2d 754 (1996)
128 Idaho 161
In the Matter of David WILSON, Claimant.
BOISE ORTHOPEDIC CLINIC, Provider-Respondent,
v.
IDAHO STATE INSURANCE FUND, Payor-Appellant.
In the Matter of Frank FORD, Claimant.
BOISE ORTHOPEDIC CLINIC, Provider-Respondent,
v.
IDAHO STATE INSURANCE FUND, Payor-Appellant.
Nos. 21385, 21386.
Supreme Court of Idaho.
February 16, 1996.
Evans, Keane, Boise, for Appellant.
*755 SILAK, Justice.
These cases, which have been consolidated for the purposes of appeal, are appeals by the Idaho State Insurance Fund (SIF) from final decisions and orders of the Industrial Commission of the State of Idaho. In both cases, the Boise Orthopedic Clinic (BOC) *756 billed the SIF for surgical assistant services performed on two claimants' work-related injuries. The SIF asserted that these amounts were above the reasonable amount for such services and denied payment for the amounts it determined unreasonable. In both instances, the Industrial Commission (Commission) either approved or partially approved the disputed amounts and ordered the SIF to pay the approved amounts.
The SIF appealed. We affirm.

I.

FACTS AND PROCEDURAL BACKGROUND
Occasionally, a surgical procedure requires some skilled assistance but not necessarily that of another surgeon. In such a case either a registered nurse or a certified operating room technician will be used. These "non-physician surgical assists" (surgical assists) reduce operating time and the risk of surgical complications while optimizing the surgical treatment by assuring the availability of the appropriate implants and instruments.

A. In the Matter of Frank Ford.
BOC performed a surgical repair of Frank Ford's torn left rotator cuff. Since Ford's injury resulted from a work-related accident, BOC billed the SIF $2,173.50 for this procedure. This bill included a surgical assist charge of $283.50. BOC billed for its surgical assist at 15% of the underlying procedure.
The SIF determined that the underlying surgery exceeded the usual and customary charge by $127.00, and that the surgical assist exceeded the usual and customary charge by $107.20. The SIF issued a preliminary objection and paid BOC the undisputed portion of the bill ($1,939,30).
BOC filed a motion for approval of disputed medical charges with the Commission. BOC noted that the service was not frequently documented by BOC and thus sufficient documentation was not available to show that the charge was consistent with the amount charged to non-industrial patients. However, in support of its motion BOC submitted: a copy of the bill to the SIF; a copy of a bill issued to a non-industrial patient; and a copy of a payment received on behalf of an unidentified patient with handwritten Current Procedural Terminology (CPT) codes identifying different procedures.
The Commission noted that BOC submitted no evidence as to whether the charges would be allowed by a hospital or professional service corporation. However, finding that the surgical assist was exceptional, unusual, variable, rarely provided, or new, the Commission employed a standard whereby reasonableness is determined on all relevant evidence. As a result, it found that BOC's statement of consistent billing made in its demand for payment letter "permit[ted] the inference that the disputed charges" were BOC's usual charges. The Commission entered an administrative order finding that the surgical charge did not exceed the usual and customary charge. The Commission also found that although the surgical assist did not exceed BOC's usual charge, the amount did exceed the maximum customary charge allowed ($257.00) based on the Commission's compilation of charges. (A subsequent amendment enlarged the data base from October 1992-March 1993 to July 1992-March 1993.) Payment for the surgical assist was ordered in the amount which did not exceed the maximum customary charge.
The SIF filed a motion for reconsideration and a motion to present additional evidence. It renewed its position that BOC did not submit sufficient, competent evidence to support its contention that the charges were "usual and customary." It also requested limited discovery of BOC and other providers as to their "usual charges" for two reasons. First, such information was not available to the SIF. Second, such information was needed for proper consideration of "all relevant evidence" as to the reasonableness of the disputed charges.
The Commission denied the SIF's motion to present additional evidence because it viewed the motion as an attempt to establish the Relative Value Schedule (RVS) as the basis for determining whether the SIF's reimbursement rate was reasonable. The Commission noted that the proper focus was *757 upon the reasonableness of the provider's charge, not the reasonableness of the payor's reimbursement. The Commission granted the motion to reconsider, but after a de novo review upheld the administrative decision and ordered payment. The SIF appealed.

B. In the Matter of David Wilson.
BOC performed an arthroscopic decompression of the subacromial space with a partial ostectomy on David Wilson's shoulder and a fasciotomy with a partial ostectomy on his elbow. Since Wilson's injury resulted from a work-related accident, BOC billed the SIF $3,121.38. Included in this bill was a charge for a surgical assist on the shoulder surgery ($301.88) and a similar charge for the elbow surgery ($107.00). These charges were based on 15% of the underlying procedure.
The SIF determined that the amounts charged for the surgical assists exceeded the usual and customary charge by $100.63 for the shoulder surgery and $37.00 for the elbow surgery. BOC received an explanation of benefits and was paid the undisputed portion of its bill ($2,983.75).
BOC filed a motion for approval of disputed medical charges with the Commission. In support of its motion, BOC submitted: its bill with the disputed charge; a copy of an explanation of benefits from an unnamed payor containing handwritten CPT codes; and a copy of an explanation of benefits from Idaho Power with a handwritten CPT entry.
The Commission noted that BOC submitted no evidence that a hospital or professional service corporation would allow the charges. However, the Commission found that BOC's demand for payment letter permitted the inference that the disputed charges were its usual charges. As a result, the documentation provided and the Commission's compilation of charges from October 1992 to March 1993 supported the conclusion that the disputed charges were reasonable. (Again, a subsequent amendment enlarged the range to July 1992March 1993.)
The SIF filed a motion to reconsider and a motion to present additional evidence. The Commission denied both motions. Since the Commission had not adopted RVS or a standard which focused on the reasonableness of the reimbursement rate, it felt evidence of such standards was irrelevant. The Commission focused on the reasonableness of BOC's charges and found they were supported by sufficient evidence. The SIF appealed.
These two cases were consolidated for the purpose of appeal. After the SIF filed its notice of appeal, BOC sought and received a waiver from further participation in these proceedings.

II.

ISSUES ON APPEAL
1. Whether the Commission erred when it considered the evidence submitted by BOC.
2. Whether the Commission erred in rejecting the SIF's attempt to use the RVS as a standard for determining reasonableness.
3. Whether the Commission's determinations as to the disputed charges are supported by substantial, competent evidence.
4. Whether the dispute resolution mechanism provided by the Commission's Judicial Rule violates state and federal constitutional due process, the rules of equity, or I.C. § 72-712.

III.

STANDARD OF REVIEW
Supreme Court review of Industrial Commission decisions is limited to a determination whether the findings of fact are supported by substantial and competent evidence. I.C. § 72-732(1); Davaz v. Priest River Glass Co., 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994); Snyder v. Burl C. Lange, Inc., 109 Idaho 167, 169, 706 P.2d 56, 58 (1985). Substantial evidence is more than a scintilla of proof, but less than a preponderance. In short, it is relevant evidence which a reasonable mind might accept to support a conclusion. Kinney v. Tupperware Co., 117 Idaho 765, 769, 792 P.2d 330, 334 (1990).

*758 IV.

ANALYSIS

A. Criteria for the Approval of Medical Charges.
The Industrial Commission is empowered to approve all claims for medical and related services. I.C. § 72-803. Pursuant to its rule-making authority, the Commission adopted a set of criteria for the approval of all disputed medical charges. IDAPA 17.02.0831.
According to this criteria, an acceptable charge for medical services is one which is the "[p]rovider's reasonable charge for Medical Services furnished to industrially injured patients." IDAPA 17.02.08031.01. Reasonableness can be determined upon proof that the charge does not exceed the provider's "usual" charge nor exceeds the "customary" charge. IDAPA 17.02.08031.02(d). The "usual" charge is "the most frequent charge made by an individual Provider for a given service to non-industrially injured patients." IDAPA 17.02.08031.02(h). The "customary" charge is a charge which is within the range established by the Commission, but no lower than the 85th percentile and no higher than the 90th percentile of usual charges made by Idaho providers for a given service. IDAPA 17.02.08031.02(i). A charge may also be deemed reasonable if it does not exceed the total charge allowed for a given service by a duly authorized hospital or professional service corporation. IDAPA 17.02.08031.02(d). However, if a charge is "exceptional, unusual, variable, rarely provided, or new" reasonableness is to be determined based on "all relevant evidence available." IDAPA 17.02.0831.02(k).

B. The Commission Did Not Err When It Considered the Evidence Submitted by BOC.
The SIF contends that, in both cases, substantial, competent evidence did not support a finding of reasonableness by the Commission. The SIF asserts that "self-serving" and "unsworn" statements in BOC's demand for payment letters could not permit an inference that the charges were BOC's "usual" charges. It also argues that absent foundational testimony, unsworn, after the fact, handwritten insertions of CPT codes identifying similar procedures was insufficient evidence of a "usual" charge.
As to the SIF's evidentiary concerns, proceedings before the Commission are to be summary, economical, and as simple as the rules of equity allow. Kinney v. Tupperware Co., 117 Idaho 765, 770, 792 P.2d 330, 335 (1990). As a result, the Commission is not governed by the same rules of evidence as courts of law. Id. This Court has stated that "in those areas where the Commission possesses particular expertise, it has the discretionary power to consider reliable, trustworthy evidence having probative value in reaching its decisions ... even if such evidence would not be ordinarily admissible in a court of law." Thom v. Callahan, 97 Idaho 151, 154, 540 P.2d 1330, 1333 (1975).
Given the Commission's broad discretion in this regard, we see no error in the Commission's use of evidence which was admitted without foundational testimony. The weight to be accorded evidence is also within the Commission's province. Olvera v. Del's Auto Body, 118 Idaho 163, 164, 795 P.2d 862, 863 (1990). This Court will not scrutinize the weight and credibility of the evidence relied on by the Commission. Nor will we disturb the Commission's findings regarding weight and credibility unless they are clearly erroneous. Soto v. J.R. Simplot, 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994). The Commission's consideration of BOC's evidence was not clearly erroneous.

C. The Commission Properly Rejected the SIF's Attempt to Use the RVS as the Standard for Determining Reasonableness.
Seeing no error in the Commission's consideration of the evidence, we next consider the Commission's decision to reject the RVS as a standard for reasonableness. In both cases, the SIF asserted that since the RVS places the customary reimbursement rate for surgical assists at 10%, BOC's charge of 15% was not a reasonable charge. However, the SIF's method of determining *759 reasonableness ignores the criteria the Commission has in place for such a determination.
The SIF's assertion would be correct if the Commission had adopted the RVS or had chosen to focus upon a reasonable reimbursement rate as the standard for determining reasonableness. However, IDAPA provides that "[p]ayors shall pay a Provider's reasonable charge for Medical Services furnished ..." IDAPA 17.02.08031.01 (emphasis added). As noted above, a provider's charge is reasonable if it is shown to be "usual and customary." Usual is the most frequent charge made "by an individual Provider" for a given service . . . 17.02.08031.02(h) (emphasis added). Further, customary charges are those that fall within a certain statistical range based on a compilation "of usual charges made by Idaho Providers for a given service." 17.02.08031.02(i) (emphasis added). Thus, the Commission has adopted criteria which focus upon the provider's reasonable charge and not the reasonableness of the payor's reimbursement rate. We find the Commission correctly rejected the SIF's attempts to use the RVS to prove 10% to be the reasonable reimbursement rate for a surgical assist.

D. The Commission's Findings that the Disputed Charges Were, at Least in Part, Reasonable, are Supported by Substantial, Competent Evidence.
We next review each case to see if substantial evidence supported the Commission's decision and order. Preliminarily, we must point out that although BOC and the SIF disagree as to the percentage, they do agree that the charge for a surgical assist is based upon a percentage of the charge for the underlying procedure. Thus, we direct our inquiry into whether BOC's charge of 15% is its "usual" charge, as found by the Commission.

1. Claimant Ford
For Claimant Ford, BOC billed $283.50 for the surgical assist, an amount equal to 15% of the underlying procedure. In its motion for approval of disputed medical charges, BOC noted that the surgical assists in question were not frequently documented, but asserted that private patients were billed at the same rate as industrial patients. In support of this assertion, BOC submitted a copy of a bill issued to a nonindustrial patient. This bill charged $220.50 for a surgical assist, an amount equal to 15% of the underlying surgical charge ($1,470.00). BOC also submitted a copy of payment from an unidentified payor for $522.38 which it asserted was in satisfaction for a similar surgical assist. Comparison of this copy of payment with the previous bill shows the amounts for the services to be identical.
We agree that BOC's demand for payment letter, the copy of a bill charging 15% for a surgical assist, and the payment receipt asserted to be for a similar surgical assist support BOC's assertion that its "usual" charge for surgical assists on industrial and nonindustrial patients is 15% of the underlying surgery. Therefore, we uphold the Commission's determination that BOC proved consistent billing for surgical assists to be 15% for industrial and nonindustrial patients.

2. Claimant Wilson
BOC billed the SIF for two separate surgical assists on Claimant Wilson, $301.88 for the shoulder surgery and $107.00 for the elbow surgery. Both of these amounts were equal to 15% of the underlying procedures ($2,012.50 for the shoulder surgery and $700 for the elbow surgery). BOC's demand for payment letter asserted that 15% of the underlying surgery was the percentage it charged both industrial and nonindustrial patients. In its motion for approval of disputed medical charges, BOC submitted a copy of an explanation of benefits from Idaho Power containing a surgical assist charge equal to 15% of the underlying surgery. It also submitted an explanation of benefits from an unidentified payor wherein the surgical assist charge was again equal to 15% of the underlying procedure.
The demand for payment letter and two payment receipts for surgical charges billed at 15% of the underlying procedure support the Commission's conclusion that 15% was BOC's "usual" charge.

*760 E. The Dispute Resolution Mechanism Provided by the Commission's Judicial Rule Does Not Violate State and Federal Constitutional Due Process, the Rules of Equity, or I.C. § 72-712.
The SIF contends that the Commission's dispute resolution system for the approval of medical charges raises constitutional, statutory, and equitable concerns. Initially, the SIF alleges that the Judicial Rule's failure to provide parties with a full, formal hearing constitutes a due process violation. We disagree.
At the outset, we note that the SIF carries a heavy burden in this regard. Challenged regulations are presumed to be constitutional, and the burden of establishing unconstitutionality rests upon the challengers. Rhodes v. Industrial Commission, 125 Idaho 139, 142, 868 P.2d 467, 470 (1993). Contrary to the SIF's assertions, due process is not a concept rigidly applied to every adversarial confrontation, but instead is a flexible concept calling for such procedural protections as are warranted by the particular situation. Bowler v. Board of Trustees, 101 Idaho 537, 542, 617 P.2d 841, 846 (1980). Simply stated, procedural due process requires that a party be provided with an opportunity to be heard at a meaningful time and in a meaningful manner. Sweitzer v. Dean, 118 Idaho 568, 573, 798 P.2d 27, 32 (1990); Simmons v. Board of Trustees, 102 Idaho 552, 554, 633 P.2d 1130, 1132 (1980).
In both cases, the Judicial Rule provided the SIF with an opportunity to meet the issue as to the appropriate medical charge for surgical assists. The SIF submitted briefs before the Commission in which it challenged the evidence submitted by BOC and argued for the imposition of a standard based on the reasonableness of the payor's reimbursement rate. In addition, after rendering its decision, the Commission entertained the SIF's motions for reconsideration. Finally, the SIF was able to appeal the decision of the Commission to this Court. Thus, we conclude that the dispute resolution system enacted by the Commission for the approval of disputed medical charges does provide parties with the opportunity to be heard at a meaningful time and in a meaningful manner. As such, we find that the Judicial Rule's failure to accord parties with a full, formal adversarial hearing does not violate the due process clauses of the Idaho and United States Constitutions. For the same reasons, we also conclude that the Judicial Rule's failure to accord the SIF with a full hearing is not inconsistent with the rules of equity as imposed upon the Commission by I.C. § 72-708 nor is it inconsistent with I.C. § 72-712's requirement for a hearing on all disputed issues.
The SIF also contends that the Judicial Rule's failure to provide for a discovery mechanism violates due process and violates the equitable maxim that one must be fully heard before one's rights are adjudged. It argues that without discovery of other payors and providers, it was unable to fully meet and refute the evidence presented by BOC. However, had the SIF obtained the requested discovery of other payors and providers, it would have availed them nothing. The procedures enacted by the Commission focus upon the reasonableness of the provider's charge and so evidence of other payor's reimbursement rates are not relevant. In addition, the compilation of charges used by the Commission in making its determination under the "customary" prong is comprised of the charges submitted by other providers for similar procedures. Thus, the discovery of other provider's charges would only have provided the Commission with information that it already possessed.
Nor do we accept the SIF's argument that due process requires that it be allowed access to information possessed by the individual provider. Once again, we note that the procedures required by due process are those that are adapted to the particular needs of the situation. Given the interests and subject matter involved, we find a discovery mechanism unnecessary because the SIF had possession of the evidence BOC submitted to prove its usual charge and was given the opportunity to argue against the proffered evidence. We believe the Judicial Rule is suitable adapted to the Commission's authority to approve medical charges and *761 find no need for the imposition of a full discovery mechanism.

V.

CONCLUSION
The Commission has in place a set of criteria for the approval of all medical costs incurred by industrially injured patients. It provides that the SIF shall pay a provider's reasonable charge for the medical services furnished. To that end, BOC submitted evidence and based on that evidence, the Commission determined that BOC's charges were its "usual" charges. The Commission then approved those amounts which did not exceed the customary charge. The decision rested upon substantial and competent evidence and the Commission properly refused to consider the RVS as a reasonable reimbursement rate. Accordingly, we affirm the orders of the Industrial Commission regarding Frank Ford and David Wilson.
In addition, we reject the SIF's constitutional, statutory, and equitable challenges to the dispute resolution system employed by the Commission for the approval of medical charges.
McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.