**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 50782**

| | | |
|---|---|---|
| CHILDREN'S HOME SOCIETY OF IDAHO; KUNA EARLY LEARNING; UPRIVER YOUTH LEADERSHIP COUNCIL INC; GIRAFFE LAUGH INC.; WILD SCIENCE EXPLORERS; UNITED WAY OF NORTH IDAHO INC.; UNITED WAY OF SOUTH CENTRAL IDAHO, INC.; UNITED WAY OF SOUTHEASTERN IDAHO, INC.; MARSING SCHOOL DISTRICT; NOTUS SCHOOL DISTRICT; MURTAUGH SCHOOL DISTRICT; IDAHO AEYC; ELIZABETH OPPENHEIMER; UNITED WAY OF IDAHO FALLS AND BONNEVILLE COUNTY, INC.; UPPER VALLEY CHILD ADVOCACY CENTER INC.; TIDWELL SOCIAL WORK SERVICES AND CONSULTING INC.; BASIN SCHOOL DISTRICT; KUNA COUNSELING CENTER, LLC; REAL SOLUTIONS COUNSELING, LLC; LIFE COUNSELING CENTER, INC.; KENDRICK SCHOOL DISTRICT; IDAHO RESILIENCE PROJECT, INC.; HOPE EDUCATION CONSULTING, LLC.; UNITED WAY OF TREASURE VALLEY, INC.; MIDDLETON COUNSELING; CASCADE SCHOOL DISTRICT; KOOLMINDS ACADEMY OF LEARNING; EMMETT SCHOOL DISTRICT; WILLOW CENTER, INC.; COMMUNITY YOUTH IN ACTION, INC.; LINCOLN COUNTY YOUTH CENTER; BRIGHTER FUTURE HEALTH INC.; GREEN APPLE PROJECT; 2C KIDS SUCCEED; PARMA SCHOOL DISTRICT; MADISON SCHOOL DISTRICT; and PLAINTIFF DOES 1-70,<br><br>  Plaintiffs-Appellants-Cross-Respondents,<br><br>v. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Boise, January 2025 Term<br><br>Opinion filed: July 10, 2025<br><br>Melanie Gagnepain, Clerk |



RAÚL LABRADOR, Attorney General of the State of Idaho,

    Defendant-Respondent-Cross-Appellant,

and,

LINCOLN WILSON, Deputy Attorney General in the Office of Attorney General, State of Idaho,

    Defendant.

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The judgment of the district court is <u>affirmed in part</u> and <u>reversed in part</u>, and the case is <u>remanded</u> for further proceedings.

Chaney Law Office, Caldwell, for Appellants-Cross Respondents. Gregory Chaney argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondents-Cross Appellants. Alan M. Hurst argued.

_____

MOELLER, Justice.

The Idaho Legislature assigned the Attorney General the "duty" to "supervise charitable organizations" and "enforce the Idaho charitable solicitation act . . . ." I.C. § 67-1401(5). Pursuant to that duty, the Attorney General may serve civil investigative demands ("CIDs") on anyone he has reason to believe may have information that a person has engaged in, is engaging in, or is about to engage in any act prohibited under the Idaho Charitable Assets Protection Act ("ICAPA") or the Idaho Charitable Solicitation Act ("ICSA"). *See* I.C. §§ 48-1908, 48-1204(1), 48-611(1). In this appeal we are called upon to interpret and apply these laws in the midst of an investigation undertaken by the Attorney General into the alleged misuse of funds appropriated by the legislature for a specific purpose.

In 2021, the Idaho Legislature established the Community Partner Grant Program, using funds the United States Congress made available to states under the American Rescue Plan Act ("ARPA"). The Community Partner Grant Program was intended to address the impact of the COVID-19 pandemic on school-aged children, including learning loss. In its bill appropriating the

ARPA funds for the Program, the Idaho Legislature specified that the Grant Funds "shall be used only for in-person educational and enrichment activities" and "shall be used for serving school-aged participants ages 5 through 13 years, as allowable by federal guidance." Act of May 10, 2021, ch. 353 § 2, 2021 Idaho Sess. Laws 1054. These funds were designated as "Community Partner Grant Funds" and were allocated to the Idaho Department of Health and Welfare ("IDHW") to distribute as grants to qualified community providers. Similar legislation was adopted in 2022.

In 2023, Idaho Attorney General Raúl Labrador received information alleging that, contrary to the statutory language, certain Community Partner Grant Funds were improperly used to serve children under the age of five. In response, he served CIDs on at least 34 Community Partner Grant Recipients (hereinafter "Grant Recipients"), requesting that they produce all documents created, edited, sent, received, or otherwise used relating to the Community Partner Grant Program. The Grant Recipients did not comply with the demands. Instead, they filed a complaint in district court seeking a preliminary injunction to set aside the CIDs. Following a hearing, the district court denied the preliminary injunction as to 15 Grant Recipients and ordered them to respond to the CIDs. However, as to the 19 other Grant Recipients, the district court granted a preliminary injunction and set the CIDs aside, concluding that the Attorney General had not shown any reason to believe these Grant Recipients had used charitable assets in a manner inconsistent with the law applicable to the funds. Nevertheless, the district court specified that the Attorney General could redraft the CIDs for these Grant Recipients to request grant applications, receipts, invoices, staff payroll information, and any other records that the Grant Recipients were required to maintain when they accepted the funds from IDHW.

The Grant Recipients appealed the district court's decision. They raise several other constitutional and procedural claims on appeal. The Attorney General cross-appealed, arguing that the district court applied the wrong legal standard in evaluating the CIDs and, therefore, erred in granting a preliminary injunction in favor of 19 Grant Recipients. For the reasons set forth below, we conclude that the district court erred in construing ICSA and ICAPA too narrowly, because both laws are to be applied "liberally to accomplish" the purposes of the respective acts. I.C. §§ 48-1201(2), 48-1902(5). Thus, while it properly denied a preliminary injunction as to the 15 Grant Recipients, the district court improperly granted the preliminary injunction as to the 19 Grant Recipients. We also conclude that the district court erred in not considering the scope of the CID served on Elizabeth Oppenheimer, one of the 15 Grant Recipients, because it was overbroad and

3

violated her First Amendment right to freedom of association. Therefore, we affirm the district court in part, reverse in part, and remand this matter for further proceedings consistent with Idaho Code sections 48-611, 48-1201(2), and 48-1902(5).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. The Idaho Legislature appropriates ARPA funds to IDHW to implement the Community Partner Grant Program.

Congress, through section 2201 of ARPA, provided $14.99 billion to states, territories, and tribes to implement Child Care and Development Fund ("CCDF") programs. American Rescue Plan Act of 2021, Pub. L. No. 117-2 § 2201, 135 Stat. 4, 31 (2021). Among the many authorized uses for these funds, the U.S. Department of Health and Human Services encouraged lead agencies to "examine opportunities to build the supply of child care for historically-underserved populations such as infants and toddlers . . . ." U.S. Dep't of Health & Hum. Servs., CCDF-ACF-IM-2021-03, Information Memorandum ARP Act CCDF Discretionary Supplemental Funds at 9 (2021). Although states were encouraged to apply these federal funds to infants and toddlers, the Idaho Legislature specified that it wanted the funds to be applied to support only school-aged children.

In 2021 and 2022, the Idaho Legislature passed House Bills 400 and 764, each appropriating $36 million of Idaho's share of ARPA funds to IDHW for distribution via the Community Partner Grant Program. Act of May 10, 2021, ch. 353, 2021 Idaho Sess. Laws 1054–55; Act of Mar. 23, 2022, ch. 190, 2022 Idaho Sess. Laws 625–26. The bills contained restrictions limiting the use of these funds as follows:

> Community provider grants shall be used only for in-person educational and enrichment activities that focus on student needs and for providing behavioral health supports to address student needs. *Grants shall be used for serving school-aged participants ages 5 through 13 years*, as allowable by federal guidance.

Act of May 10, 2021, § 2, 2021 Idaho Sess. Laws at 1054 (emphasis added); Act of Mar. 23, 2022, § 6, 2022 Idaho Sess. Laws at 626 (emphasis added). The legislature specified that community providers that have a statewide presence could be awarded up to $500,000. Providers with a regional presence, spanning multiple cities or counties, could receive up to $250,000, while providers with a local presence (i.e., limited to a single city or municipal area), could receive up to $20,000. Act of May 10, 2021, § 2, 2021 Idaho Sess. Laws at 1054; Act of Mar. 23, 2022, § 6, 2022 Idaho Sess. Laws at 626.

**B. IDHW issues Grant Guidance for Community Partner Grant Program applicants.**

Prior to distribution of the funds, IDHW promulgated a Grant Guide for Community Organizations, which described the grant opportunity, specified who was eligible to apply, and explained how the funds could be used. In 2021, the Grant Guide specified that eligible organizations must:

> Serve Idaho children ages 5-13 (it is allowable to serve other youth within the program, but the *funds from this grant must be directed for those served in this age range only*).

(Emphasis added). In 2022, IDHW's written guidance changed, and the language requiring that Grant Funds be directed only to children in the 5 to 13 age range was eliminated. The updated Grant Guide stated that Grant Recipients must:

> Serve Idaho children ages 5-13 (*it is allowable to serve other ages of children* within the program, but you must at least serve children in this age range and funding may not be used for children over 13).

(Emphasis added).

Distinct from the age requirement, IDHW's Grant Guides for 2021 and 2022 also required Grant Recipients to maintain an accounting for all the grant money spent, including receipts, invoices, and staff payroll information. Critically, the Grant Guide specified that organizations receiving the grant must agree to grant IDHW immediate access to these records within 20 working days, if requested.

**C. The Attorney General issues civil investigative demands based on reports that Grant Funds were improperly used to serve children ages 0 to 5.**

The Community Partner Grant Program apparently ran smoothly in 2021 and 2022, with IDHW approving over 80 applications each year. However, in 2023, suspicions arose that certain Grant Recipients, contrary to legislative intent, had used funds to serve children ages 0 to 5. Based on these suspicions, the 2023 legislature passed Senate Bill 1203, which rescinded over $14 million in Community Partner funds from IDHW. *See* Act of Apr. 5, 2023, ch. 304, 2023 Idaho Sess. Laws 918. The Governor signed Senate Bill 1203 into law.

Acting on his suspicions, the Attorney General began issuing CIDs to certain Grant Recipients in early March 2023. The CIDs asked for, among other things, "all documents created, edited, sent, received, viewed, or used by [Grant Recipient] and any of its directors, executives, managers, or employees, discussing, planning for, relating to, or involving in any way the Community Partner Grant program." As the authoritative basis for issuing the CIDs, the Attorney

5

General cited provisions of Idaho Code sections 48-1908(1) (ICAPA), 48-1204(1) (ICSA), and 48-611(1) (the Idaho Consumer Protection Act (ICPA)). Idaho Code section 48-611 of the ICPA is referenced in both ICAPA and ICSA as the investigative mechanism that allows the Attorney General to serve investigative demands on any person who he has reason to believe has information relevant to an alleged or suspected violation of ICAPA or ICSA.

Most of the CIDs were issued to private educational or childcare businesses and to school districts; however, one individual, Elizabeth Oppenheimer, also received a CID. Oppenheimer used to be the executive director of the Idaho Association for the Education of Young Children ("IAEYC"). Between 2021 and 2022, Oppenheimer, on behalf of IAEYC, submitted six applications for three separate programs under the Community Partner Grant Program. IAEYC's programs received over $12 million in Community Grant Funds. The record reflects that earlier in the 2021 legislative session, Oppenheimer had been a vigorous advocate for House Bill 226, which proposed appropriating nearly $6 million to the Office of the State Board of Education to administer an "early childhood education development grant" for pre-kindergarten children. H.B. 226, 66th Leg., 1st Reg. Sess. (Idaho 2021). That bill was ultimately rejected by a vote of 34-36 in the Idaho House of Representatives.

**D. Grant Recipients file a Complaint in district court seeking an extension or modification of the CIDs, or, in the alternative, a preliminary injunction setting aside the CIDs.**

Instead of responding to these CIDs, the Grant Recipients, including Oppenheimer, filed a complaint in Ada County District Court seeking (1) an extension of time to respond to the CIDs, (2) modification of the CIDs, or, in the alternative, (3) a preliminary injunction to set aside the CIDs. They argued that the Attorney General lacked the authority to issue the CIDs because the Community Grant Funds were not subject to ICAPA or ICSA.

In opposition to the Grant Recipients' preliminary injunction request, the Attorney General filed a Motion to Submit Confidential Materials *in camera* under Idaho Rule of Evidence 509. Pursuant to that motion, the Attorney General asked the district court to review certain documents *in camera* prior to its decision on the preliminary injunction. The district court granted the motion and reviewed two declarations *in camera*.

Upon review of these declarations, the district court found that the proffered testimony was "relevant to the material issue of whether the Attorney General has reason to believe that an accountable person or charitable organization has violated, is violating, or will violate the

6

provisions of the acts cited in the CIDs . . . ." Thus, the district court ordered the Attorney General to redact any identifying information and then, subject to a protective order, disclose the declarations to the Grant Recipients' counsel. The district court believed redaction was necessary because it found that the declarants, and those who spoke to them, might face economic or other harm or coercion based on the disclosures contained in the declarations.

**E.  The district court denies a preliminary injunction to 15 Grant Recipients and grants relief to 19 Grant Recipients.**

Following a hearing on April 26, 2023, the district court entered a memorandum decision granting a preliminary injunction in part and denying it in part. The district court concluded that ICAPA and ICSA applied to all Grant Recipients, including the school districts because all Grant Recipients were charitable organizations and the Grant Funds where charitable assets. The district court then divided the Grant Recipients into three categories and partly granted and partly denied their request for a preliminary injunction as follows.

First, the district court denied a preliminary injunction to three Grant Recipients—Green Apple Project, Notus School District, and the Upper Valley Child Advocacy Center, Inc.—since none of these recipients had shown they had been served with a CID before the preliminary injunction hearing.

Second, the court denied a preliminary injunction as to the following 15 Grant Recipients:

1. 2C Kids Succeed
2. Basin School District
3. Giraffe Laugh, Inc.
4. Idaho Association for the Education of Young Children, Inc.
5. Elizabeth Oppenheimer (personally)
6. Kendrick School District
7. Kendrick School District for Juliaetta Elementary School[1]
8. Kuna Early Learning Center
9. Marsing School District
10. Murtaugh School District
11. United Way of Idaho Falls & Bonneville County, Inc.
12. United Way of North Idaho, Inc.
13. United Way of South Central Idaho, Inc.
14. United Way of Southeastern Idaho, Inc.
15. United Way of Treasure Valley, Inc.

---

[1] Kendrick School District for Juliaetta Elementary School is not named in the caption. The record is unclear why it was listed separately in the district court's order.

The district court concluded that the Attorney General established that he had reason to believe these Grant Recipients had knowingly used, or allowed to be used, charitable assets in a manner inconsistent with the applicable laws. Therefore, the district court required these Grant Recipients to respond to the CIDs no later than May 17, 2023.

Third, the district court granted a preliminary injunction in part to the following 19 Grant Recipients:

1. Brighter Future Health, Inc.
2. Cascade School District
3. Children's Home Society of Idaho
4. Community Youth in Action, Inc.
5. Emmett School District
6. Hope Education Consulting, LLC
7. Idaho Resilience Project, Inc.
8. Koolminds Academy of Learning
9. Kuna Counseling Center, LLC
10. Life Counseling Center, Inc.
11. Lincoln County Youth Center
12. Madison School District
13. Parma School District
14. Real Solutions Counseling, LLC
15. Stillwater Connection, LLC dba Middleton Counseling
16. Tidwell Social Work Servies and Consulting, Inc.
17. Upriver Youth Leadership Council, Inc.
18. Wilderness Science Education, Inc. dba Wild Science Explorers
19. Willow Center, Inc.

As to these 19 Grant Recipients, the district court concluded that the Attorney General had failed to produce sufficient evidence establishing reason to believe that they "have engaged in, are engaging in, or about to engage in any act that is unlawful under the Idaho Charitable Assets Protection Act and/or the Idaho Charitable Solicitation Act." Accordingly, it granted them a preliminary injunction.

The Grant Recipients collectively moved for permission to file an interlocutory appeal regarding the district court's Idaho Rule of Evidence 509 proceeding and its preliminary injunction determinations.[2] The Attorney General cross-appealed, contending the district court erroneously

---

[2] We note that a Rule 54(b) Certificate was entered below. Therefore, despite the Grant Recipients' motion for leave to file an interlocutory appeal, and the district court's order recommending that an interlocutory appeal be granted, this was an appeal from a final judgment.

8

prevented him from collecting information from the 19 Grant Recipients for whom the district court granted a preliminary injunction.

## II.      STANDARDS OF REVIEW

"Issues of statutory interpretation are questions of law which are reviewed by this Court de novo." *Idaho Dep't of Health & Welfare v. Doe (2022-32)*, 171 Idaho 677, 680, 525 P.3d 715, 718 (2023) (citations omitted). Constitutional questions and the interpretation of rules of evidence are likewise reviewed de novo. *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019); *State v. Olsen*, 170 Idaho 176, 179, 508 P.3d 1250, 1253 (2022); *State v. Hill*, 161 Idaho 444, 447, 387 P.3d 112, 115 (2016).

Evidentiary rulings are reviewed under an abuse of discretion standard. *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019). When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.      ANALYSIS

The Grant Recipients assign a host of procedural, legal, and constitutional points of error to the district court's preliminary injunction ruling below. The Attorney General cross-appeals, arguing the district court's only error was in granting a preliminary injunction to the 19 Grant Recipients. For the reasons explained below, we affirm the district court in part, reverse in part, and remand for further proceedings.

**A. The district court correctly determined that both ICAPA and ICSA apply to funds received from the Community Grant Program, thereby granting the Attorney General authority to issue civil investigative demands to the Grant Recipients.**

A threshold issue in this case is whether the funds received from the Community Partner Grant Program are subject to the Attorney General's investigatory powers under ICAPA and ICSA. Grant Recipients argue that the funds received from the Community Partner Grant Program are not subject to either ICAPA or ICSA; therefore, the Attorney General did not have authority to issue CIDs as set forth in Idaho Code section 48-611. The Attorney General maintains that (1) the statutory language is clear and unambiguous and (2) Grant Recipients are all "charitable organizations," they all have "charitable purposes," and all the funds at issue constitute "charitable assets" under ICAPA and ICSA. Thus, the Attorney General maintains his issuance of the CIDs

9

was authorized pursuant to section 48-611 of the ICPA. We agree and hold that the Attorney General had authority to issue the contested CIDs.

> 1. *ICAPA applies to funds received through the Community Partner Grant Program because the Grant Recipients are charitable organizations and the Grant Funds are charitable assets.*

The Idaho Legislature enacted ICAPA in 2020 based on concerns about the misuse or misappropriation of charitable assets. With this purpose in mind, the legislature specified that ICAPA "shall be construed and applied liberally" to protect Idaho charitable assets. I.C. § 48-1902(5). Under ICAPA:

> It is unlawful for an accountable person or *charitable organization* to knowingly use, or allow to be used, the charitable organization's *charitable assets* in a manner that is inconsistent with:
> (a) Law applicable to the charitable asset.
> (b) The restrictions contained in a gift instrument regarding the charitable assets . . . ; or
> (c) The charitable purpose of the charitable organization that holds the charitable asset.

I.C. § 48-1906(1) (emphasis added). Thus, under ICAPA, it is illegal for a charitable organization to use its charitable assets contrary to the law applicable to the charitable asset, the gift instrument specifying the use of the assets, or the purpose of the charitable organization.

To administer ICAPA, the Idaho Legislature vested the Attorney General with enforcement and investigatory authority. I.C. § 48-1908. ICAPA defines the Attorney General's "duties to protect charitable assets" and provides the Attorney General "with the necessary authority and enforcement tools to protect charitable assets . . . ." I.C. § 48-1902(4)(a). Under his investigatory authority, when the Attorney General has "reason to believe that an accountable person or charitable organization has violated or is violating the provisions of section 48-1906" the Attorney General can "[s]erve investigative demands using the same procedures and in the same manner as described in section 48-611, Idaho Code[.]" I.C. § 48-1908(1).

As we have often explained, statutory interpretation "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (citation omitted). Furthermore, we have said that "[l]egislative definitions of terms included within a statute control and dictate the meaning of those terms as

10

used in the statute." *Edwards v. Idaho Transp. Dep't*, 165 Idaho 592, 596, 448 P.3d 1020, 1024 (2019) (quoting *State v. Yzaguirre*, 144 Idaho 471, 477, 163 P.3d 1183, 1189 (2007)).

Under the plain language of the statute, ICAPA is violated when a *charitable organization* is knowingly using, or has allowed to be used, the organization's *charitable assets* in a manner that is inconsistent with (1) the law applicable to the asset, (2) the gift instrument regarding the charitable asset, or (3) the charitable purpose of the organization. I.C. § 48-1906(1). Thus, to trigger ICAPA's applicability, the Grant Funds must be considered *charitable assets* and the Grant Recipients must fall within the definition of a *charitable organization*. We conclude that under the plain language of ICAPA, the Grant Funds are charitable assets and all Grant Recipients are charitable organizations; therefore, if the Attorney General has a "reason to believe" charitable assets have been used inconsistently with the law applicable to the asset, the gift instrument, or the charitable purpose, he may serve investigative demands on those charitable organizations.

ICAPA defines charitable assets as "any . . . thing of value that is impressed with a charitable purpose . . . ." I.C. § 48-1903(3). It further defines charitable purposes to include "education, . . . or any other purpose, the achievement of which is beneficial to the community." I.C. § 48-1903(5). Here, the Grant Funds are charitable assets because money is a thing of value and it was "impressed with a charitable purpose"—the advancement of education—when it was awarded to the Grant Recipients.

Despite Grant Funds falling squarely within the definition of charitable assets, the Grant Recipients argue ICAPA cannot apply to funds received from the Community Partner program because Idaho Code section 48-1902(1) uses the word "donated." They maintain that while governments may allocate funds, only private parties may make donations. We do not read section 48-1902(1) so narrowly. Indeed, the word "donate" is typically used to refer to a "contribut[ion] to a public or charitable cause." *Donate*, Merriam-Webster (10th ed. 1993). Here, the State of Idaho contributed funds toward improving educational activities—a public and charitable cause under ICAPA—and this fits within the definition of a charitable donation. Construing the statute in this manner also squares with the stated legislative purpose of ICAPA, which focuses on the *use* of charitable assets, not the *source* of the assets:

> The state of Idaho is home to thousands of charitable organizations that, collectively, hold billions of dollars in charitable assets. Charitable organizations have a legal duty to *use their charitable assets according to the charitable purposes designated in their governing documents*. The legislature is aware, however, that

11

> *misuse or misappropriation of charitable assets* occurs to the harm of the charitable
> purposes for which they were donated and the communities that were intended to
> be benefitted by the charitable donation.

I.C. § 48-1902(1).

Furthermore, the Grant Recipients are all charitable organizations under ICAPA. ICAPA defines a charitable organization as a "person who holds charitable assets regardless of the legal form." I.C. § 48-1903(3). Idaho law defines a "person" as "an individual, a corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." I.C. §§ 48-1903(6), 15-1-201(34). Thus, school districts, counseling centers, and all other Grant Recipients are considered persons under ICAPA since they are all legal entities of some sort. Because the Grant Recipients all hold charitable assets (the Grant Funds), they are all considered charitable organizations under ICAPA.

For these reasons, we hold that where a government grant is distributed to private entities under these circumstances—for a charitable purpose and subject to distribution rules and accountability standards—the grant constitutes a donation under ICAPA and is subject to the Attorney General's legal authority to investigate whether those funds are used in a manner that is consistent with the law, the gift instrument, or the organization's charitable purpose. I.C. § 48-1902(2).

*2. ICSA likewise applies to funds received from the Community Partner Grant Program.*

Similar but separate from ICAPA, ICSA aims to "safeguard the public against deceit and financial hardship" by doing two things: (1) encouraging truthful solicitation of financial assistance, and (2) prohibiting representations that have the tendency to mislead a contributor, or that, by association, harm the reputation of innocent charitable organizations. I.C. § 48-1201(2). ICSA makes it "unlawful for any person . . . in the planning, conduct or execution of any charitable solicitation, to utilize any unfair, false, deceptive, misleading or unconscionable act or practice." I.C. § 48-1203(1). Thus, for ICSA to apply to the Grant Recipients and the Community Partner Grant Program, the Grant Recipients must be "persons" and there must be an allegation that a charitable solicitation was made in an unfair, false, or deceptive manner. To enforce ICSA, like ICAPA, the Attorney General has "the same authority . . . as is granted the attorney general and district courts under the Idaho consumer protection act. . . ." I.C. § 48-1204(1). Also akin to

12

ICAPA, the provisions of ICSA must be construed "liberally to accomplish" the purposes of the ICSA. I.C. § 48-1201(2).

ICSA defines a "person" as "natural persons, partnerships, both limited and general, corporations, both foreign and domestic, companies, trusts, business entities, associations, both incorporated and unincorporated, and any other legal entity . . . ." I.C. § 48-1202(8). Thus, just as under ICAPA, all the Grant Recipients are persons under ICSA since they are natural persons or legal entities of some variety.

ICSA defines a "charitable solicitation" as "any oral or written request, directly or indirectly, for money . . . [or] financial assistance . . . on the plea or representation that such money . . . [or] financial assistance . . . will be used for a charitable purpose or [sic] benefit a charitable organization." I.C. § 48-1202(3). The Grant Recipients submitted written applications (i.e., solicitations) for funds containing a statement that the funds will only be used for a permissible charitable purpose, namely education. Thus, any false, misleading, or deceptive act or practice in the solicitation of those funds—such as potentially using the funds to support children outside of the age range specified—falls within the ambit of ICSA. *See* I.C. § 48-1203(1).

The Attorney General correctly argues that under the plain language of the statute, (1) all the Grant Recipients fall within the definition of a charitable organization and (2) they all solicited financial assistance for the benefit of a charitable purpose. Therefore, applying the specific definitions in the statute, the Grant Recipients are subject to the Attorney General's civil investigative powers enumerated in the ICPA and incorporated into ICSA, provided the Attorney General has reason to believe the Grant Recipients have information related to the deceptive use or solicitation of funds.

The Grant Recipients point to Idaho Code section 48-1201(2), which states that "[i]t is the intent of the legislature to safeguard the *public* against deceit and financial hardship . . . ." I.C. § 48-1201(2) (emphasis added). The Grant Recipients argue that ICSA was intended to proscribe solicitations for contributions from the public by fake charities, not to protect against the unauthorized use of government Grant Funds. However, the plain and operative language of ICSA makes it "unlawful for *any person* . . . to utilize any unfair, false, deceptive, misleading or unconscionable act or practice" in the "planning, conduct or execution of any charitable solicitation." I.C. § 48-1203(1) (emphasis added). The operative language of this text is not ambiguous. Absent any ambiguity, we decline to turn to any secondary principles of statutory

13

construction. Therefore, we affirm the district court's ruling that ICAPA and ICSA both apply to the Grant Funds provided to the Grant Recipients.

**B.  The Attorney General is authorized to serve civil investigative demands upon any person who is believed to have relevant information regarding a suspected violation of ICAPA or ICSA.**

Having established that ICAPA and ICSA are applicable to the Community Grant funds, the next question is what showing is required for the Attorney General to issue investigative demands, and how might the Grant Recipients object to the CIDs. ICAPA and ICSA both specify that the Attorney General has the same authority to enforce violations as that specified in Idaho Code section 48-611, which is part of the ICPA. I.C. §§ 48-1908(1), 48-1204(1). Thus, ICPA sets forth the applicable procedure for the present action under ICAPA (I.C. § 48-1204(1)) and ICSA (I.C § 48-1908(1)). Idaho Code section 48-611 contains broad language empowering the Attorney General to conduct civil investigations of actual or suspected violations of law:

> (1) When the attorney general has reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by this act, he may execute in writing and cause to be served upon *any person who is believed to have information*, documentary material or physical evidence *relevant to the alleged or suspected violation*, an investigative demand requiring such person to furnish a report in writing setting forth the relevant facts and circumstances of which he has knowledge, or to appear and testify or to produce relevant documentary material or physical evidence for examination, at such reasonable time and place as may be stated in the investigative demand, concerning the advertisement, sale or offering for sale of any goods or services or the conduct of any trade or commerce that is the subject matter of the investigation. The return date in said investigative demand shall be not less than twenty (20) days after serving of the demand.

> (2) At any time before the return date specified in an investigative demand, or within twenty (20) days after the demand has been served, whichever period is shorter, a petition to extend the return date, or to modify or set aside the demand, stating good cause, may be filed in the district court of the county where the person served with the demand resides or has his principal place of business or in the district court in Ada County.

I.C. § 48-611 (emphasis added).

Despite the broad language empowering the Attorney General to conduct investigations, the Attorney General's authority is limited to situations where he has "*reason to believe*" that someone has engaged, is engaging, or will engage in any "act or practice declared to be unlawful by this act." In such cases, he may serve an investigative demand "upon *any person who is believed to have information* . . . relevant to the alleged or suspected violation[.]" I.C. § 48-611(1) (emphasis

14

added). The Grant Recipients argue that the Attorney General has exceeded his authority under the statute because he initiated his investigation without probable cause and expanded his investigation too far. We will address both contentions in turn.

*1. The "reason to believe" standard in Idaho Code section 48-611 does not amount to probable cause.*

We first address the Grant Recipients' contention that Idaho Code section 48-611 requires the Attorney General to show probable cause that a misappropriation has occurred as a prerequisite for issuing a CID. The Grant Recipients argue that because of the Attorney General's "stated intentions" to "find violations of criminal law," the district court should have adopted a probable cause standard in determining the appropriateness of the CIDs. Thus, the Grant Recipients maintain that, for the Attorney General to issue the CIDs in this case, he had to make a showing that he had probable cause to believe that an ICAPA or ICSA violation occurred. We disagree. To impose a probable cause requirement here would be contrary to the plain language of Idaho Code section 48-611 and inconsistent with established caselaw addressing administrative subpoenas.

As noted, Idaho Code section 48-611 authorizes the Attorney General to issue investigative demands whenever there is "*reason to believe* a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful . . . ." I.C. § 48-611 (emphasis added). Therefore, the district court properly declined to adopt a probable cause standard, instead concluding that the "reason to believe" language more closely aligned with a criminal law reasonable suspicion standard. Plainly, the statute does not impose a probable cause standard when it specifies all that it requires is a "reason to believe." This plain reading is bolstered when we look at the 1993 amendment to Idaho Code section 48-611. While a prior version of section 48-611 contained a probable cause standard, in 1993 the legislature amended section 48-611(1) by specifically changing the wording of the statute from "probable cause to believe" to "reason to believe." Act of Mar. 22, 1993, ch. 102 § 4, 1993 Idaho Sess. Laws 256, 260. In so doing, the legislature unequivocally expressed its intent to move away from the higher probable cause standard that the Grant Recipients ask us to apply today.

Although it is not synonymous with "probable cause," the term "reason to believe" closely corresponds to the term "reasonable suspicion," as used in criminal jurisprudence, which is well understood to be a lower standard than probable cause. *See State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009) (noting that the "quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause"). While the

15

Grant Recipients may question the reasonableness of the CIDs generally, we will not impose a standard that the plain language of the statute does not support.

This is admittedly an issue of first impression. We have never been asked to address the standard of proof necessary for issuing a CID under section 48-611. However, it is not a difficult question to answer because we need only apply the unambiguous language of the statute. Our interpretation mirrors the federal caselaw addressing administrative subpoenas, to which the district court appropriately likened the CIDs in this case. *See v. City of Seattle*, 387 U.S. 541 (1967) (noting that the Fourth Amendment requires that the administrative subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome); *see also Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) (holding the Secretary of Labor could issue an administrative subpoena without a warrant, and, therefore, without probable cause, but the recipient was allowed to question the reasonableness of the subpoena by raising objections in an action in district court). Therefore, we affirm the district court's ruling that probable cause is not required for the Attorney General to issue CIDs within its statutory authority. The fact that the responses to the CIDs could possibly disclose information that could later form the basis for criminal charges does not heighten the evidentiary standard in a civil investigative case to that of a criminal prosecution. This is particularly true given that the Court has only been asked to determine whether the Attorney General's investigation is proper, not whether the Grant Recipients have actually violated the law.

> 2. *Idaho Code section 48-611 permits the Attorney General to issue CIDs to any person who is reasonably believed to have information relevant to the alleged or suspected misappropriation of funds, not just to suspected violators.*

The district court granted a preliminary injunction as to the 19 Grant Recipients, concluding that the Attorney General failed to show sufficient evidence at the preliminary injunction hearing to believe that certain Grant Recipients "have engaged in, are engaging in, or are about to engage in any act that is unlawful under the Idaho Charitable Assets Protection Act and/or the Idaho Charitable Solicitation Act." The Attorney General appeals this conclusion, arguing it sets forth the wrong standard for the issuance of CIDs. For the following reasons, we agree with the Attorney General that the district court employed the wrong standard when it set aside 19 CIDs.

Under section 48-611(1), if the Attorney General has a reason to believe an unlawful act has or will occur, he may serve investigative demands on *anyone* he believes may have relevant

16

information regarding the alleged or suspected "act or practice declared to be unlawful" under the acts. This does not limit him to serving investigative demands on only those he believes to have *engaged in wrongdoing* or even just those who have knowledge pertaining to the unlawful actions of "*certain [p]laintiffs*." Rather, he may serve a CID on *anyone* believed to have relevant *information* regarding a suspected unlawful act or practice.

To demonstrate his reason to believe an ICAPA or ICSA violation had occurred, the Attorney General submitted for the district court's consideration two declarations *in camera*. Based on the information contained in the *in camera* submissions, the district court concluded that the Attorney General had shown he had reason to believe that 15 Grant Recipients had knowingly used, or allowed to be used, its charitable assets in a manner that is inconsistent with the law applicable to the charitable asset. However, as to the 19 other Grant Recipients, the district court held that the Attorney General had failed to show sufficient evidence to believe that these "certain Plaintiffs" engaged in, were engaging in, or were about to engage in any act that is unlawful under ICAPA. We do not read Idaho Code section 48-611 so narrowly.

Having reviewed the record before us, we conclude that the district court applied the wrong test in enjoining the Attorney General from issuing CIDs to the 19 Grant Recipients. Accordingly, we reverse the district court's preliminary injunction order granting partial relief to the 19 Grant Recipients and remand to the district court to determine whether the Attorney General has (1) "reason to believe that a person [governed by ICAPA or ICSA] has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by this act," and (2) reason to believe that the person served with a CID has "information, documentary material or physical evidence relevant to the alleged or suspected" violations of ICAPA and ICSA. I.C. § 48-611(1); *see* I.C. §§ 48-1908, 48-1204(1).

To be clear, we are not deciding whether the Attorney General has the authority to prosecute any Grant Recipient for failure to follow the grant guidelines, and we are not addressing whether the Grant Recipients are bound by the language in the appropriation bills. Indeed, nothing in this opinion should be read as implying that we have concluded that any of the Grant Recipients have violated the law because we have not been asked to address that issue. However, because both ICAPA and ICSA apply to the Community Partner Grant Funds, we conclude that the Attorney General has the clear authority to investigate potential misuses of the funds, whether by the Grant Recipients or others, and the Attorney General has authority to issue CIDs to other

parties, including Grant Recipients, when he has reason to believe they might have knowledge of the alleged misuse. In sum, we are simply upholding the Attorney General's statutory authority to issue CIDs in this instance.

### C. No due process violation occurred because Idaho Code section 48-611(2) sets forth the process for challenging a civil investigative demand and allows for notice and an opportunity to be heard.

As previously noted, Idaho Code section 48-611 sets forth the process that a CID recipient may pursue when challenging a CID. Despite this prescribed procedure, the Grant Recipients maintain that their Fourteenth Amendment Due Process Rights were violated in two ways. First, they claim that the CIDs failed to give clear notice on their face as to what misconduct the Attorney General was investigating. Second, they contend that the district court violated their due process rights by entering a protective order and only providing their counsel with redacted versions of declarations considered in an *in camera* proceeding.

"The due process clause of the Fourteenth Amendment prohibits deprivation of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency, and fair play." *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001) (citation omitted) (quotation marks omitted). "Procedural due process is an aspect of due process relating to the minimal requirements of notice and a hearing if the deprivation of a significant life, liberty, or property interest may occur." *Id.* The notice prong of the due process analysis requires only that the government provide "notice *reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (emphasis added) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "[D]ue process is not a concept to be applied rigidly . . . but instead is a flexible concept calling for such procedural protections as are warranted by the particular situation." *Boise Orthopedic Clinic v. Idaho State Ins. Fund* (*In re Wilson*), 128 Idaho 161, 167, 911 P.2d 754, 760 (1996). When it comes to due process rights amid a governmental investigation, the United States Supreme Court has stated that a governmental investigation does not violate due process if it is "within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

18

*1. The CIDs provided ample notice of what the Attorney General was investigating.*

The Grant Recipients first argue that the face of the CIDs did not provide sufficient notice of what conduct the Attorney General was investigating, thereby depriving them of due process of law. Importantly, the Grant Recipients do not argue that they were not properly served with the CIDs, nor do they argue that they have a protected interest in document retention relating to how Grant Funds were spent. Indeed, it was an express term of the grants that they would have to (1) disclose such information to IDHW when requested and (2) provide an accounting for all the grant money spent, including receipts, invoices, and staff payroll information. Rather, the Grant Recipients argue that the face of the CIDs did not provide them with adequate notice of what the Attorney General was investigating. In this instance, due process does not require such specificity.

The first paragraph of the CIDs states that "Attorney General Raúl R. Labrador, acting under Idaho Code [sections] 48-1908(1), 48-1204(1), and 48-611(1), demands . . . copies of all information, documentary material, and physical evidence in its custody or control . . . in accordance with the definitions and instructions set forth . . . ."[3] This provided the Grant Recipients with actual notice of what kind of information the Attorney General was requesting and specified the statutory basis under which the Attorney General was acting. Later, the CIDs specifically request "all documents created, edited, sent, received, viewed or used . . . discussing, planning for, relating to, or involving in any way the *Community Partner Grant program*." (Emphasis added). Thus, the CIDs provided the Grant Recipients with notice of the statutory basis by which the Attorney General was issuing the CIDs, as well as the underlying grants that gave rise to the issuance of the CIDs. This was sufficient for purposes of due process in this "particular situation." *Bosie Orthopedic Clinic*, 128 Idaho at 167, 911 P.2d at 760.

Nothing in the law suggests that the Attorney General, engaged in the early stages of a civil investigation, was required to disclose the objective of his investigation or what improper activity he was investigating; he only needed to provide notice of what information he was seeking. Nothing in the record suggests that the recipients did not understand what the Attorney General was seeking, which was essentially the same information they had previously agreed to provide IDHW, if requested, as a condition of the grant. Therefore, we reject their first due process contention premised on a lack of notice.

---

[3] In the CID issued to Oppenheimer, the word "its" is replaced with "your."

19

*2. The Grant Recipients were not denied due process merely because they did not receive unredacted versions of the declarations reviewed in camera.*

The Grant Recipients also argue that the *in camera* proceeding violated their due process rights since they only received redacted versions of the declarations that the district court considered. For the reasons set forth below, we disagree.

Idaho Rule of Evidence 509(a) provides that: "a state or a subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer . . . conducting an investigation." I.R.E. 509(a). Subsection (c) of the same rule provides three exceptions, with the latter two exceptions being relevant here:

> (2) Informer as a Witness. If an informer appears as a witness for the public entity disclosure of the informer's identity shall be required unless the court finds, in its discretion, that the witness or others may be subjected to economic, physical or other harm or coercion by such disclosure. Any disclosure under this subsection shall be subject to any protective order deemed necessary by the court.

> (3) Testimony on Relevant Issue. If it appears in the case that an informer may be able to give testimony relevant . . . to a fair determination of a material issue on the merits in a civil case to which a public entity is a party, and the informed public entity invokes the privilege, the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the court may direct that testimony be taken if it finds that the matter cannot be resolved satisfactorily upon affidavit. If the court finds there is a reasonable probability that the informer can give the testimony, and the public entity elects not to disclose the informer's identity . . . In civil cases, the court may make any order the interests of justice require. Evidence submitted to the court shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the informed public entity. All counsel and parties are permitted to be present at every stage of proceedings under this subdivision except a showing in camera at which no counsel or party shall be permitted to be present.

I.R.E. 509(c)(2) and (3). We have previously held that "[t]he decision whether to hold an *in camera* hearing is discretionary and shall not be disturbed on appeal absent a clear showing of abuse." *State v. Hosey*, 132 Idaho 117, 119, 968 P.2d 212, 214 (1998) (citing *State v. Vazquez*, 832 P.2d 883, 887 (Wash. Ct. App. 1992)). "The subsequent decision whether to require disclosure of the identity of the confidential informer is also left to the discretion of the trial court." *Id.* (citing *State v. Davila*, 127 Idaho 888, 893, 908 P.2d 581, 586 (Ct. App. 1995)).

Reviewing the district court's discretionary decision on this issue, we can find no error. Upon a motion by the Attorney General, the district court considered two declarations *in camera* to determine whether a preliminary injunction should issue. The district court properly concluded that the Attorney General was a law enforcement agency, citing *Bolger v. Lance* as authority for its conclusion and was therefore entitled to invoke the "informer privilege." 137 Idaho 792, 794–97, 53 P.3d 1211, 1213–16 (2002) (holding that the Attorney General was a "law enforcement agency" under the Public Records Act). Based on its *in camera* review, the district court found that the witnesses were "relevant to the material issue of whether the Attorney General has reason to believe that an accountable person or charitable organization has violated, is violating, or will violate the provisions of the acts cited [referring to ICAPA and ICSA] in the CIDs that have been issued." Then, pursuant to Idaho Rule of Evidence 509(c)(2), the district court found that the "witness or others who spoke to the witnesses may be subjected to economic or other harm or coercion by certain disclosures made in the declarations . . . ." Therefore, the district court ordered the Attorney General to redact portions of the declarations that could lead to the identification of the informer(s).

The district court properly followed all the requirements of Idaho Rule of Evidence 509 and we can find no error in this district court's decision not to provide the Grant Recipients with unredacted versions of the declarations. Moreover, the district court's decision did not contain information from the unredacted declarations and did not deprive the Grant Recipients of due process of law. It is important to note once again that this matter has not progressed past the initial investigation—it is not a criminal proceeding. The Grant Recipients had notice of what the Attorney General was requesting and his legal authority for making the requests when they were served with the CIDs. Furthermore, as the history of this case demonstrates, they were afforded an opportunity to be heard on their objections to the CIDs. That they were not individually provided with the unredacted versions of the declarations considered or the specific crime(s) that the Attorney General might be investigating does not mean they were deprived of their due process rights. Critically, counsel for the Grant Recipients was provided copies of the redacted evidence and could have responded as needed under seal. In sum, we conclude that the Grant Recipients were afforded all the process that was due under the Fourteenth Amendment.

21

**D. The district court erred by not considering whether Oppenheimer's First Amendment Freedom of Association Rights were violated by the scope of the Civil Investigative Demand issued to her personally.**

Elizabeth Oppenheimer raises a freedom of association argument under both the Idaho and United States Constitutions that is unique to the CID she was issued. Oppenheimer argues that the district court erred when it required her to answer a CID request that required that she provide a "list of all charitable organizations for which the person is a member, board member, director, volunteer, or donor." She maintains this violated her right to freedom of association under the First Amendment to the United States Constitution and Article I, section 10 of the Idaho Constitution.

The district court did not address Oppenheimer's First Amendment argument. Nevertheless, we will address this argument on appeal since it was properly preserved. As stated in *State v. Miramontes*, "a party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for a hearing or a party preserves an issue for appeal if the trial court issues an adverse ruling. Both are not required." 170 Idaho 920, 924-–25, 517 P.3d 849, 853–54 (2022) (emphasis omitted). In their Brief in Support of Motion for Preliminary Injunction, the Grant Recipients argued that requiring a list of donors from a charitable organization was "violative of one's freedom of association." While the district court did not address the CID request for Oppenheimer's charitable organization involvement, we take it up now.

The Idaho Constitution guarantees the right of freedom of association: "The people shall have the right to assemble in a peaceful manner, to consult for their common good; to instruct their representatives, and to petition the legislature for the redress of grievances." Idaho Const. art. I, § 10. Likewise, the First Amendment of the United States Constitution protects "the right of the people peaceably to assemble . . . ." U.S. Const. amend. I. As we have said, "[t]he First Amendment prohibits the government from restraining or abridging freedom of speech and assembly." *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 177, 75 P.3dd 733, 738 (2003). Furthermore, the Supreme Court of the United States has stated that it is "beyond dispute that freedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States." *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960). "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.* (quoting *N.A.A.C.P. v. State of Alabama*, 357 U.S. 449,

22

462 (1958)). However, while freedom of association is recognized and protected by the First Amendment, we have observed that this right is not absolute. *Gardner v. Evans*, 110 Idaho 925, 935, 719 P.2d 1185, 1195 (1986) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)). Indeed, "[w]hen action potentially infringes upon this right, a balancing test must be used to weigh the competing interests." *Id.*

Oppenheimer analogizes her case to that of *Americans for Prosperity Foundation v. Bonta*, where the United States Supreme Court struck down a California law that required all charitable organizations to disclose the identities of their major donors. 594 U.S. 595 (2021). In *Bonta*, the California Attorney General's office regulated all charitable fundraising in the state. *Id.* at 601. Under California law, the attorney general could obtain "whatever information" was needed to maintain a register of charitable organizations. *Id.* As part of the annual registration process for charities, the Attorney General required charities to file copies of their Internal Revenue Service Form 990. *Id.* at 602. Schedule B to Form 990 required organizations to disclose the names and addresses of donors who contributed over $5,000 each year. *Id.* Petitioners, out of concern for their donors' anonymity, declined to file their Schedule Bs with the state. *Id.* While the Attorney General historically took no issue with this, in 2010 it ramped up its enforcement efforts and began requiring full compliance. *Id.* at 602–03. When the Attorney General threatened to suspend the petitioners' registrations and fine them if they did not submit their Schedule Bs, they filed suit in federal court alleging violations of their First Amendment rights. *Id.* at 603. Petitioners alleged the disclosure requirement was unconstitutional on its face and as applied. *Id.*

The Supreme Court clarified that "exacting scrutiny" is the standard of review that applies to First Amendment challenges to a compelled disclosure of donors. *Id.* at 607. Under that standard, there must be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.* (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010)). Applying this test, the Supreme Court noted that California had a substantial government interest in protecting the public from fraud, but that there was "a dramatic mismatch" between this interest and the disclosure regime that had been implemented in service of that end. *Id.* at 612. As a result, the Supreme Court found California's blanket demand for Schedule Bs facially unconstitutional. *Id.* at 611, 618.

We are not persuaded that the present case is analogous to *Bonta*; however, we do agree that the Attorney General's request for all of Oppenheimer's affiliations is overly broad and

infringes on her freedom of association. While the governmental interest in protecting the misappropriation of public funds is important, the CID issued to Oppenheimer requests a list of "*all charitable organizations*" in which she serves as a "member, board member, director, volunteer, or donor." (Emphasis added). As currently worded, the demand would possibly include information about a vast number of organizations that have no connection to the Grant Program. For example, Oppenheimer would be forced to disclose a wide range of irrelevant and personal information about the church she attends, the philanthropic organizations to which she has donated, and even a Girl Scout Troop with which she volunteered to help sell cookies. Because the scope of the CID potentially goes far beyond seeking information "relevant to the alleged or suspected violation" of ICAPA and ICSA, we conclude that the CID is insufficiently tailored to the government's interest and infringes on Oppenheimer's freedom of association rights.

Idaho Code section 48-611(2) allows a trial court to "modify or set aside" a CID when "good cause" is shown. I.C. § 48-611(2). Thus, the district court should have considered this issue and either (1) limited the scope of the CID to seeking information only pertaining to Oppenheimer's involvement in organizations that received Community Partner Grant Funds or (2) set aside the CID. While we conclude that the scope of the CID infringed on Oppenheimer's right to freedom of association, we leave it to the trial court to determine the appropriate remedy—i.e., whether to modify or set aside Oppenheimer's CID. Accordingly, we remand this question to the district court for further consideration.

### E. We do not award either party attorney fees on appeal.

The Attorney General requests an award of attorney fees and costs pursuant to Idaho Code sections 12-117 and 48-614, and Idaho Appellate Rule 41. The Grant Recipients likewise request attorney fees under Idaho Code section 12-117. Alternatively, they request attorney fees under the Private Attorney General Doctrine.

Idaho Code section 12-117 awards attorney fees to the prevailing party in any proceeding where a state agency is an adverse party, and the non-prevailing party acted without a reasonable basis in law or fact. "The standard for evaluating whether a party's conduct was 'without reasonable basis in fact or law' under section 12-117 is substantially similar to the standard for evaluating whether a party pursued an action 'frivolously, unreasonably, or without foundation' under section 12-121." *S Bar Ranch v. Elmore County*, 170 Idaho 282, 510 P.3d 635 (2022) (citation omitted). Idaho Code section 48-614 awards reasonable expenses and attorney fees to the

Attorney General when the court finds a person's resistance to obeying an investigative demand was without a reasonable basis in fact or law.

The outcome of the appeal and cross-appeal in this case is clearly mixed. While the Attorney General has prevailed on much of his cross-appeal, at least one issue presented was clearly a matter of first impression—we have not been called upon to interpret the applicable standard of proof under Idaho Code section 48-611 before today. Moreover, at least one of the Grant Recipients prevailed in her appeal because we concluded that the district court erred by failing to rule on her freedom of association argument. Thus, we cannot conclude that either side acted without a reasonable basis in fact or law in their handling of this appeal. Therefore, we decline to award attorney fees or costs to any of the parties in this matter.

## IV.    CONCLUSION

For the foregoing reasons, we rule as follows:

1. We AFFIRM the district court's ruling that ICAPA and ICSA apply to the Grant Recipients and Grant Funds;

2. We REVERSE the district court's order granting a preliminary injunction as to the 19 Grant Recipients (Brighter Future Health, Inc.; Cascade School District; Children's Home Society of Idaho; Community Youth in Action, Inc.; Emmett School District; Hope Education Consulting, LLC; Idaho Resilience Project, Inc.; Koolminds Academy of Learning; Kuna Counseling Center, LLC; Life Counseling Center, Inc.; Lincoln County Youth Center; Madison School District; Parma School District; Real Solutions Counseling, LLC; Stillwater Connection, LLC dba Middleton Counseling; Tidwell Social Work Servies and Consulting, Inc.; Upriver Youth Leadership Council, Inc.; Wilderness Science Education, Inc. dba Wild Science Explorers; and Willow Center, Inc.) and remand the question of whether these organizations have relevant information regarding the alleged ICAPA and ICSA violations to the district court for further proceedings consistent with this opinion and Idaho Code section 48-611;

3. We AFFIRM the district court's decision concluding that the 15 Grant Recipients (2C Kids Succeed; Basin School District; Giraffe Laugh, Inc.; Idaho Association of the Education of Young Children, Inc.; Elizabeth Oppenheimer (personally); Kendrick School District; Kendrick School District for Juliaetta Elementary School; Kuna Early Learning Center; Marsing School District; Murtaugh School District; United Way of

Idaho Falls & Bonneville County, Inc.; United Way of North Idaho, Inc.; United Way of South Central Idaho, Inc.; United Way of Southeastern Idaho, Inc.; and United Way of Treasure Valley, Inc.) must respond to the CIDs;

4. We AFFIRM the district court's conclusion that Idaho Code section 48-611 does not impose a probable cause standard and hold that the Attorney General can serve investigative demands on any person he reasonably believes has information relevant to the misuse of Grant Funds under ICAPA or ICSA;

5. We AFFIRM the district court's conclusion that the Grant Recipients' Due Process rights were not violated because the Grant Recipients were provided both notice and an opportunity to be heard;

6. We AFFIRM the district court's decision to review certain declarations *in camera*;

7. We hold that Oppenheimer's right to freedom of association was violated because the CID issued to her was overly broad as a matter of law, and we remand for further proceedings so that the district court can determine whether there has been good cause shown to either modify or set aside the CID; and

8. We decline to award attorney fees or costs on appeal to either side.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.